JANUARY TERM, 1882, No. 370.          APRIL 18TH, 1882.

## Latshaw *versus* Hiltebeitel, to use, etc.

1. An entirely immaterial alteration of a non-negotiable written instrument, which places no responsibility on the parties to which they were not subject before the change, does not vitiate it.

2. R., one of two sisters, R. and C., agreed to lend money to S. S. and his surety executed a sealed note drawn to the order of C., and S. took the note to R. S. then, without the knowledge of the surety, erased the Christian name of C. and inserted that of R., and, upon receipt of the money, delivered the note. *Held*, in a suit of C. to the use of R. against S. and the surety, that the alteration was immaterial. *Held* further, the suit having been commenced in the name of R., that the record could be amended so that the plaintiff should be C. to the use of R.

[Latshaw *v.* Hiltebeitel, to use, etc.]

Before SHARSWOOD, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Montgomery County.*

Debt by Rebecca Hiltebeitel against John G. Swartley and Daniel Latshaw to recover the amount of a sealed note and interest.

The note was in the following form;

" { 10-CENT }
  { STAMP. }  ·

"ROYER's FORD, April 5th, 1869.

"$500.

" One year after date we, or either of us, promise to pay Rebecca Catharine Hiltebeitel or order five hundred dollars, with interest of five and a half per cent. per annum, without defalcation, for value received.

" { 5-CENT }   { 10-CENT }    JOHN G. SWARTLEY.  [L.S.]
  { STAMP. }   { STAMP. }     DANIEL LATSHAW.    [L.S.] "

In the course of the trial, November 17th, 1880, before Ross, P. J., counsel for plaintiff moved to amend the title of the suit as follows: "Catharine Hiltebeitel to the use of Rebecca Hiltebeitel to be named as plaintiff in the action." Counsel for defendant objected to the motion. The objection was overruled and the amendment allowed under exception.

The case came on for trial again October 21st, 1881.

*John Hiltebeitel,* for the plaintiff, testified:

"John Swartley came there to borrow some money from my sister; he came to my place; he told Rebecca he would give good security. She called me in to see about it; she told him he could have the money if he has got good security He asked what security she wants? She told him two persons, Abram Bechtel and Daniel Latshaw, one of the two. Then we went up close to his house there on a visit to Mr. Pattison, and he came in there; I mean Rebecca and myself. Swartley came in there and told her he had security, and she asked him who? He said Latshaw. . . . It was on Saturday afternoon. She told him he could come on Monday or Tuesday after the money; the money is ready for him. He came one of those two days; I don't know which it was exactly any more; I never took particular notice. He came; I was out doing something, and he called me in; he came, and she got the money and paper for us;

we counted it; I counted it over twice; Rebecca got the money; I counted the money twice on the table, and so did he too. When that was all done he got the note out, and I told him to read the note; when he came to that mistake I told him about it.

"Q. How did he read it? What name did he read there?

"A. He read 'Catharine' first.

"Q. What did you say?

"A. I told him it was wrong. He said he could alter that; he would just go and scratch that out and put 'Rebecca' there. He did it, and I told him it might make a disturbance; he said he would insure that it would make no disturbance"

Rebecca took the note and Swartley took the money. Latshaw was not present.

This testimony was corroborated by that of Catharine and Rebecca Hiltebeitel.

*Daniel Latshaw*, one of the defendants, testified "that when he and Swartley signed the note there was no erasure on it; that the money was to be paid to Catharine Hiltebeitel; that he was security on the note and got none of the money; and that the insertion of the name 'Rebecca' over the erasure of the name of 'Catharine' was without his knowledge or consent."

*John G. Swartley*, the other defendant, testified that he and Latshaw executed the note, and he continued:

"I went over to Hiltebeitel's and handed it there. I went in the house and showed the girls, two of them, the note, Rebecca and Catharine, and John was there in the room too. I told them here I had got a note from Mr. Latshaw. They looked over the note. Catharine looked over the note, and they took the note and looked over it, and I showed them here is Latshaw's name on. The note was not read through. I just showed them I got the note from Latshaw, and then they went and fetched the money.

"Q. Who brought the money?

"A. Catharine; they were both upstairs; she brought the money down and threw it on the table.

"Q. Did she give the money to you?

"A. Yes, I took the money and counted it and put it in my pocket and she took the note.

"Q. Who took the note?

"A. Catharine.

"Q. What did she do with it?

"A. That I don't know.

"Q. Did she take it away from you?

"A. Yes.

[Latshaw *v.* Hiltebeitel, to use, etc.]

" Q. What condition was the note in?

" A. Just exactly as I took it from Mr. Latshaw's house.

" Q. How was it when you took it from Mr. Latshaw's house?

" A. It was wrote for Catharine Hiltebeitel.

" Q. Both Rebecca and John Hiltebeitel swear that they said that it was not for Catharine; Catharine didn't loan the money, but Rebecca loaned the money; and that you then sat down and crossed out Catharine's name and wrote Rebecca above. Is that true or not?

" A. No, it is not true; I was never asked to do it."

He further testified that he saw the note every time he paid the interest, until 1879, and that the last time he saw it, it was just as it was when he took it there from Latshaw, payable to Catharine Hiltebcitel. Her name was not crossed out and Rebecca's name was not written there.

Counsel for defendant asked the Court to charge the jury, *inter alia:*

1st. The defendant asks the Court to charge that the alteration of the note by the crossing with ink the name of Catharine and writing Rebecca above, is a material alteration, and avoids the note as to the surety Latshaw.

2d. If the note was altered before delivery, but after it had left Latshaw's hands, in the presence of Rebecca, and taken by Rebecca, and money paid over to Swartley, said alteration being without Latshaw's knowledge or consent, the plaintiff cannot recover against Latshaw, the surety.

4th. Any alteration of the note by Swartley, after the note was delivered to Swartley by Latshaw without his (L.'s) consent, is not binding on Latshaw, and avoids the recovery on the note as to him.

5th. That when the security, Latshaw, signed the note, he had a right to have it delivered unaltered to the plaintiff, and, if altered, the plaintiff was bound to know that it was rightfully done by Latshaw's consent, and, if not, she cannot recover against Latshaw.

The Court declined the first, second, and fourth points, and answered the fifth as follows:

" This is true, if there had been a material alteration. It is not true, under the view of the Court, that the alteration under the evidence is immaterial."

The Court charged the jury, *inter alia:*

" Mr. March, the very zealous counsel for the defendant, saw that he had an advantage, and, after all the testimony was taken, it was apparent that Rebecca Hiltebeitel had no right whatever to recover against Daniel Latshaw, for he had never promised to pay her any money, and he had never

agreed to or assented by any act of his to the change. Well, Mr. Hunsicker found himself driven to the wall and that he could not recover, and then Mr. Hunsicker moved to amend the suit by bringing the suit in the name of the party to whom Mr. Latshaw gave the note, and he added, as he had a right to do, that, if recovered, the money was to go to Rebecca, but he sues in the name of the party to whom Mr. Latshaw gave the note. Now, how is Mr. Latshaw hurt? He contracted to pay. He don't pay a particle sooner than he contracted to pay. He has every right of set-off against Catharine that he would have had if Mr. Swartley had not foolishly altered this note and these people foolishly taken it, because no man ought to subject himself to the difficulties and dangers which lie about a note with a manifest patent alteration upon its face. I say to you, gentlemen of the jury, for your own private benefit in your business, that whenever you want a note altered, and there are two drawers to it, that the only plan to make it safe is to take a new note, clean and clear, and get rid of one of these altered notes. [Now then, gentlemen, inasmuch as it is agreed that this note was given to Catharine, and inasmuch as this suit is brought by Catharine, and inasmuch as amendments have been made restoring the name of Catharine to the note and obliterating, for all legal purposes, the name of Rebecca, I charge you distinctly that there is, under the facts and circumstances in this case, no material alteration within the law, and therefore the plaintiff is entitled to recover."]

October 21st, 1881. Verdict for the plaintiff for $636.55, on which judgment was afterward entered.

The defendant, Latshaw, then took out a writ of error, assigning as errors: *First,* that the Court erred in allowing the suit and pleading to be amended to the use of Rebecca. Inasmuch as Catharine was stricken out by the parties without the knowledge or consent of Latshaw, no action of the Court could restore her name for any purpose; *second, third, fourth,* and *fifth,* that the Court erred in refusing to affirm the defendant's first, second, fourth, and fifth points as above; *sixth,* the portion of the charge within brackets; and, *seventh,* in withdrawing the case from the jury and directing a verdict for the plaintiff.

*George W. Rogers* and *Franklin March,* for plaintiff in error.

Was the alteration apparent upon the face of the note in suit material? The uniform rule seems to be that any alteration affecting its identity, varying the language which it speaks, the amount, time, or terms of payment, names of

parties, etc., avoids it as to those not assenting thereto. The following alterations have been held to be material:

The alteration of a date: Stephens *v.* Graham, 7 S. & R., 505; Heffner *v.* Werrich, 8 Casey, 423. Although it be a true date: Miller *v.* Gilleland, 19 Penna. Stat. Rep., 119. The addition of new surety without consent of the original one: Gardner *v.* Walsh, 5 El. & Bl., 82; McVean *v.* Scott, 46 Barb., 379. The addition of a new maker to a several note: Wallace *v.* Jewell, 21 Ohio Stat., 163. The erasure of the name of one of the payees: 2 Pars. on N., 156. Inserting the words "or order," or, "or bearer:" Booth *v.* Powers, 56 N. Y., 22. Changing or adding place of payment: Simpson *v.* Stackhouse, 9 Barr, 186; Hill *v.* Cooley, 10 Wr., 259. Changing amount even if diminished: Portage Bank *v.* Lane, 8 Ohio Stat., 405. Interest to be paid annually: Hurlbut *v.* Fisher, 13 Ohio Stat., 364; Kountz *v.* Kennedy, 13 P. F. Smith, 187; Craigshead *v.* McLoney, 14 Pittsburgh Leg. Jour., 194.

If Latshaw, the surety, is compelled to pay, and he should pursue the principal, Swartley, before he could recover, he would be compelled to show that the alterations were assented to by him. A witness may be dead or absent.

Any alteration affecting the identity of the paper avoids it: Stephens *v.* Graham, 7 S. & R., 505; Neff *v.* Horner, 18 P. F. Smith, 331.

The Court also erred in not submitting to the jury to find out as fact whether the alteration was made with the knowledge or consent of Latshaw, or whether he knew of and assented to it. The Court had no right to decide the law and the facts both. The judge assumes that the note was given to Catharine; the evidence, undisputed, is that she never saw it. How the amendment of the suit could restore the name of Catharine, or obliterate the name of Rebecca from the instrument sued upon, we are unable to see.

If the Court be correct in the charge above, then no alteration will avoid an instrument, for upon the trial the Court can strike out the alteration or restore the paper to its original condition, and all complaint is at an end.

*Charles Hunsicker*, for defendant in error.

Amendments are liberally allowed: Ward *v.* Stevenson, 3 Harris, 21; Druckenmiller *v.* Young, 3 Casey, 97; Meason *v.* Kaine, 17 P. F. Smith, 126; Downey *v.* Garard, 12 Harris, 52.

The money was furnished on the credit of Latshaw entirely, and the only question now before the Court is whether he can lawfully escape the payment of his honest debt: Ogle

[Latshaw *v.* Hiltebeitel, to use, etc.]

*v.* Graham, 2 P. & W., 132; Sigfried *v.* Levan, 6 S. & R., 308; Wiley *v.* Moor, 17 S. & R., 438; Beary *v.* Haines, 4 Wharton, 20; Kountz *v.* Kennedy, 13 P. F. Smith, 187.

Now outside of all cases, and inside of them all, the bottom principle is, that the alteration must be material. Now test this: What possible difference could it make to Latshaw whether he paid the money to Rebecca or Catharine?

The contract was a specialty and was not negotiable as a promissory note, and, as the suit stood, he had a right to show how he was injured. He showed no injury, could show none, and therefore the Court thought that it was his bounden, legal, as well as honest, duty to pay the debt.

The opinion of the Court was delivered October 2d, 1882, by STERRETT, J.

There is no conflict of testimony as to any of the facts or circumstances material to this case. It clearly appears that the Christian name of the payee in the note, as originally written, was erased, and that of her sister interlined by Swartley, the principal obligor, solely for the purpose of correcting a mistake, and thus making the instrument conform to what he and his surety, the plaintiff in error, undoubtedly intended at the time they executed it. Miss Rebecca Hiltebeitel, one of the sisters, had agreed to lend Swartley five hundred dollars for one year, at five and a half per cent., and accept as security therefor his note, with plaintiff in error as surety. To this arrangement the latter assented, and, intending no doubt to carry it out in good faith by uniting in an obligation to secure the loan, he signed the note in suit and gave it to Swartley to be delivered to the lender on receipt of the money. When the latter was about to deliver the note, it was discovered that the Christian name of the payee should be Rebecca instead of Catharine, and, for the purpose of carrying out the undoubted intention of all parties, he made the alteration upon which the surety bases a purely technical and ungracious defence. If either the rights, duties, or obligations of any of the parties, as they were understood and intended by them, were in any manner changed by the alteration, it would be material, and as to the party affected thereby, and not consenting thereto, the instrument might be avoided; but no such change of relation or interest was effected by the alteration complained of. The plaintiff in error agreed to become surety for the loan, and, in signing the note, intended to make himself liable as such to the lender.

The verdict and judgment imposes on him that measure of liability and no more. In Kountz *v.* Kennedy, 13 P. F.

Smith, 187, it is said: "If the alterations be made fraudulently or with an illegal intention, or if the original words cannot be restored certainly, or if any party has become interested in the note or affected by it, or related to it, since the alteration, in such a way that the restoration will do any wrong to this party, in either of these cases we should say, the party must abide by the alteration he made and accept the consequences of it.    But, unless one of these reasons exist, we are not aware of any good and sufficient argument for refusing to permit him to restore the instrument to its original form and force." While the authorities on the subject of the alteration of written instruments are not entirely harmonious, they all appear to agree that an alteration, entirely immaterial, which places no responsibility on the parties to which they were not subject before the change, does not vitiate the instrument, especially if it be nonnegotiable.

In the language of a learned text-writer: "The holder of a note has no right to make an alteration in it to correct a mistake, unless to make the instrument conform to what all the parties to it agreed or intended it should have been. To such an alteration as this, perhaps, the intention of the original parties would be implied by law:" 2 Parsons, Notes and Bills, 270.

In view of the undisputed evidence in this case, there was no error in holding that the alteration did not release the surety, nor was he in any manner prejudiced by the amendment that was allowed by the Court. The several assignments are not sustained.

Judgment affirmed.