## B. Heist, Assigned to Penninah Broadhead, *v.* Esther Tobias, Appellant.

[Marked to be reported.]

*Judgment—Striking off judgment—Practice, C. P.*

A judgment which is regular in every respect, and which was entered in accordance with the intention of the parties, cannot be stricken off, upon motion.

*Judgment—Opening judgment—Evidence—Practice, C. P.*

The rule that the opening of judgments is a matter largely within the discretion of the court in which the application is made, and is not to be reviewed on appeal, except for plain error, will not be strictly applied where the opinion of the court below is not based upon a consideration of the credibility of witnesses, but is rather founded upon certain legal and equitable aspects of the case.

On a rule to open a judgment it appeared that the note was given by the defendant to the plaintiff to secure the latter against any liability arising from the mere fact of his indorsing a promissory note made by defendant's son, and not as an indemnity against the debt represented by the promissory note, nor as security that the maker of the promissory note would pay the note. The promissory note was subsequently paid by a third person, in consideration for which the plaintiff assigned the judgment. There was no evidence that the defendant had ever agreed that the judgment should be used for any such purpose. *Held*, that defendant was entitled to have the judgment opened and an issue framed; and if such facts were established on the trial of the issue, the defendant was entitled to binding instructions.

Argued March 8, 1897. Appeal, No. 504, Jan. T., 1896, by defendant, from order of C. P. Carbon Co., Oct. T., No. 90, discharging rule to strike off and open judgment. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Rule to strike off and open judgment. Before CRAIG, P. J. The facts appear by the opinion of the Supreme Court.

*Error assigned* was in discharging rule.

*Horace Heydt*, with him *Wm. G. Freyman* and *E. O. Nothstein*, for appellant.—This judgment was given to Heist for a particular purpose, and cannot be used by Heist for any other

purpose than that for which it was given: James's App., 89 Pa. 54; Buckley v. Garrett, 60 Pa. 333; Hutchinson v. Woodwell, 107 Pa. 520.

*Frederick Bertolette,* with him *Theodore A. Snyder,* for appellee.—Upon appeals of this character the Supreme Court only decide whether the discretion has been properly exercised: Jenkintown Nat. Bank's App., 124 Pa. 337; Wernet's App., 91 Pa. 319; Kneedler's App., 92 Pa. 428; Wise's App., 99 Pa. 193; Com. v. Titman, 148 Pa. 168; Kelber v. Pittsburgh Nat. Plow Co., 146 Pa. 485; Walter v. Fees, 155 Pa. 55; Earley's App., 90 Pa. 321; English's App., 119 Pa. 534; Keener v. Shank, 7 Lanc. Law Rev. 339; Hoffman v. Jacobs, 12 Lanc. Law Rev. 25; Herr v. Miller, 12 Lanc. Law Rev. 238; Markle v. Fichter, 7 Kulp, 549; Habecker v. Smith, 3 Lanc. Law Rev. 337; Rhine v. Swartley, 16 Atl. Rep. 846; Miller v. Neidzielska, 176 Pa. 409.

Heist had a right to assign the judgment: Barclay v. Weaver, 19 Pa. 400; Moyer's App., 87 Pa. 132; Stahl v. Wolfe, 6 W. N. C. 143; Annville Nat. Bank v. Kettering, 106 Pa. 533; Sieger v. Second Nat. Bank, 132 Pa. 307; Groth v. Gyger, 31 Pa. 271; 3 Kent's Com. 113; Sayre v. Frick, 7 W. & S. 383; Kerr's Est., 17 Pa. C. C. Rep. 193; Byles on Bills, 199.

Where the evidence is such that if the cause were tried in a court of equity in a proceeding commenced by a bill, it would be dismissed, the same principle is not the less applicable because the form of procedure is by a motion to open the judgment: Knarr v. Elgren, 19 W. N. C. 531; Brice's App., 95 Pa. 145; Huston's App., 69 Pa. 485.

OPINION BY MR. JUSTICE GREEN, Oct. 11, 1897:

This proceeding was an application by petition to the court below to strike off or open a judgment. The plaintiff in the judgment is S. B. Heist and the defendant Esther Tobias. The defendant set forth certain facts in her petition affecting the giving and entering of the judgment, and the purpose it was intended to subserve, which if true entitled her to the relief she asked. A very considerable amount of testimony was taken on both sides, under the rule to show cause, and the application was disposed of by the learned court below upon the views

expressed in the opinion filed of record. Upon that portion of the testimony which was considered by the court the conclusion reached would be apparently correct. But, as it seems to us, there was considerable testimony of a material character which does not seem to have received the attention of the court—at least it was not a subject of comment—which, in our opinion, affects in a serious, indeed in a vital manner, the ultimate result. We do not think the application to strike off the judgment can be entertained. It was regular in every respect, it was intended to be entered of record, and there was no breach of faith or contract on the part of the plaintiff in so doing. Under all the authorities he had a lawful right to have it entered, and hence it cannot be stricken off upon motion. Upon the other ground of relief however, the question fairly arose whether the judgment should be opened and the defendant let into a defense. As we have already said, if the facts set forth in the petition are true, the judgment should have been opened and an issue granted to determine what, if anything, was due upon the judgment. Being fully aware of the rule that the opening of judgments is a matter largely within the discretion of the court in which the application is made, and is not to be reversed on appeal except for plain error, it becomes our duty to consider with much care the testimony returned with the record, the whole of which was also submitted to the learned court below. The opinion of the court is not based upon a consideration of the credibility of witnesses. It is rather founded upon the legal and equitable aspects of the case in certain points of view, and in reference to certain well-established rules, both of law and equity, which in the abstract are entirely correct, but which in the concrete depend upon their adaptability, not to a part, but to the whole of the testimony. Thus the learned court said: "As Penninah Broadhead furnished the money by the hand of her husband, paid off the whole of the discounted note in bank to Heist, who then assigned the judgment to her, we are of opinion that she is legally entitled to the full ownership of it. She had a right to do this. She was not a mere stranger or volunteer. . . . If it be conceded for the sake of argument that she was a stranger to the judgment, yet having paid off the whole debt the judgment was intended to secure, she thereby became by implication the purchaser of the debt and the equi-

table owner of the judgment." Now while this might be alto-gether true if the judgment had been given to secure the payment of the debt, especially if it had been given by the drawer of the note to his indorser, it might or it might not be true when the judgment was given by one who was a co-indorser of that note with the plaintiff. If it was given merely as a security to the co-indorser to protect him against his liability as an indorser, and not as absolute security for the payment of the debt, the proposition would not necessarily be true, and might not be true at all. The view of the learned judge as to the application of the rule to the testimony before him is expressed in the next sentence of the opinion thus, " But we have in addition to this the testimony of S. B. Heist, W. F. Brodhead and Penninah Brodhead, already alluded to, and contradicted by no one, that the judgment was assigned to Penninah Brodhead to secure her for the money she furnished to pay off the $900 note in bank. Under this evidence Penninah Brodhead was entitled to conventional subrogation." We are not able to take the same view of the testimony of these witnesses as expressed in the opinion, for reasons which will be hereafter stated, but if we were, the conclusion does not depend upon that testimony. If by the terms of the original agreement under which the judgment was confessed, S. B. Heist had no legal right to assign the judgment as against Esther Tobias, then such assignment, though actually made, and for the purpose stated, would not be obligatory upon her, and therefore would confer no right upon the assignee to enforce it against her. Now it is just here, that we think the learned court fell, unwittingly, into error, from the application of a correct principle to a state of facts which, as we think, did not justify the application of the principle. It is those facts which we will now proceed to consider, premising that the learned judge did not found a judgment upon the insufficiency of the testimony as to the truth of those facts, but rather upon an omission to regard them.

It will be perceived that what we consider of controlling importance in the contention, is the question as to what was the agreement upon which the judgment was given. The parties to that agreement, necessarily, were the plaintiff, S. B. Heist, and the defendant Esther Tobias. It was the plaintiff who received, and the defendant who gave, the judgment, and if there

were any terms upon which the transaction was based, those terms would have to be observed, and would bind not only the parties to them but those claiming under them or either of them. We are therefore remitted at once to a consideration of the facts and circumstances which constituted the transaction of giving and receiving the judgment in question. The preliminary facts are not in dispute. U. S. Grant Tobias, a son of Esther Tobias, was indebted to the Penn Mutual Life Insurance Co. in a sum of ten or eleven hundred dollars, in circumstances which might involve his personal liberty. It was necessary to raise $900 of this amount at once. W. F. Brodhead, who was his father-in-law, was willing, according to his own testimony, to raise the money by a loan from a building and loan association, but that could not be done for a period of about thirty days, and the practical difficulty was to get the money temporarily, and immediately. In order to do this an arrangement was made by which U. S. Grant Tobias was to make his note for $900 at the Linderman Bank, at thirty days, which was indorsed by Esther Tobias, S. B. Heist and W. F. Brodhead. The note was discounted by the bank, and the money was paid to the agent of the Life Insurance Company on December 8, 1893. Heist was one of the sureties of U. S. Grant Tobias on his bond to the insurance company, and he agreed to indorse, and did indorse,. the $900 note. Upon his doing so the judgment in question was given. The person who principally conducted the negotiations which led to the indorsing of the note and the giving of the judgment was U. S. Grant Tobias. He was examined as a witness and, after describing the interview at which were present Mr. Butterfield, the agent of the insurance company, Mr. Heist and Mr. Murray, the bondsmen of Tobias to the company, Mr. Brodhead and himself, he said: " It was then suggested by Mr. Butterfield that a note be given in the bank for thirty days for the $900. Mr. Brodhead said that he would go on that note as one indorser. Mr. Heist and Mr. Murray were then asked if they would go on. Mr. Murray refused. Mr. Heist agreed to go on but suggested that my mother be called down and asked whether she would not go on. I then left the office and went to Upper Mauch Chunk. When I came back from there I found my mother and sister in my office, and Mr. Brodhead telling my mother what she was called down to the office for. She was

told about signing this note. She said she would sign it. Mr. Heist then said to my mother that he would like her to give him a judgment exemption note on her property to secure him as an indorser on this bank note, and when the bank note was paid he would be released and he would see my mother released. Now the note in bank was executed and the money was handed to me in my office, and I paid the money to Mr. Butterfield and got a receipt in full for all claims due the Penn Mutual Life Insurance Co. The judgment note was then executed. . . . Q. What was the judgment note given to Mr. Heist for? A. That judgment was given to Mr. Heist by my mother to secure Mr. Heist's indorsement on my bank note."

Miss Clara E. Tobias, a daughter of the defendant, was examined at some length as to the main facts of the transaction. As to the giving of the judgment she was asked: " Q. When they came back to Grant's office from the bank, when your mamma signed the judgment note, what did they say to her about that? A. Mr. Heist spoke to mamma and I alone. He said 'Mrs. Tobias, when the note in the bank is paid I will be released, and I will see you released.' He said ' this is only given for security for me.' He only asked her for himself. Q. Then your mother signed the judgment? A. Yes, sir, she signed the judgment note."

P. F. Murray, one of the bondsmen for Grant Tobias to the Insurance Company, was examined and testified in relation to the giving of the $900 note in bank and as to what was said by Broadhead in regard to his paying it off, and was asked: " Q. Now about the judgment Mrs. Tobias gave to Heist, what was that given for, what was said at the time? A. Well if that was the note you have reference to, they wanted me to go on, it was given to pay the insurance company shortage, the bank note. Q. Was there anything said about a judgment being given by Mrs. Tobias to Mr. Heist? A. Yes, sir, Mr. Heist was to be secured by Mrs. Tobias. Q. For his indorsement? A. Yes, so he would be perfectly safe."

S. S. Smith, cashier of the Linderman National Bank, testified in regard to the discount of the $900 note by the bank, and was asked: " Q. There was a judgment note given by Esther Tobias to S. B. Heist? A. Yes, Heist did not want to go on the note, and she gave him a judgment note to secure his indorse-

ment. I remember he had the record examined to see whether her judgment was good. Q. That note was given to secure him on his indorsement? A. Yes. . . . Q. The judgment note, as you understood it, was given to secure Heist against any claim made on him by reason of this indorsement? A. Yes, sir."

Mrs. Esther Tobias, the defendant, was asked: " Q. Then after you indorsed that bank note you executed a judgment note to Mr. Heist for $900? A. Yes, sir. Q. You may state what that judgment note was given for? A. It was to secure Mr. Heist. Q. For what? A. For the note in the bank. Q. What did Heist say to you when he asked you to sign that judgment note? A. He said when the note was paid he would be released and would release me."

S. B. Heist, the plaintiff in the judgment, being examined for the appellee, was asked: " Q. At the time when you agreed to indorse that note in the bank you took from Mrs. Tobias a judgment note to secure you? A. Yes. Q. That note was given to you to secure that indorsement? A. To secure me I presume. It was on the strength of that I indorsed the note. . . . . Q. That judgment was given to you to secure you for that indorsement on the note in bank, and for no other purpose? A. That is why I went on the note, because they gave me security I thought sufficient. Q. For the indorsement? A. Yes, sir. Q. That was the only purpose that note was given to you for? A. Yes, sir. . . . Q. You would not have gone on that note as an indorser without a security? A. Oh, no."

It must now be observed that the foregoing is the whole of the testimony in the cause which relates directly to the fact of the giving of the judgment. It is the testimony of no less than six witnesses, every one of whom was disinterested except the defendant. It is entirely uncontradicted by any witness. It is absolutely uniform in its substance, and it establishes beyond all controversy the proposition that the judgment was given for the one, sole, exclusive purpose of securing Heist, the plaintiff in the judgment, against liability by reason of his indorsement. He so testifies himself. This being so, it must be further considered that it was not given as indemnity against the debt itself, it was not given as security that Grant Tobias, the maker of the note, would pay the note. There was an abundance of testimony in the case that W. F. Broadhead agreed to raise the

money to pay off the note, and as a matter of fact that is precisely what he did do, and he did actually pay off the note with money which he raised. It is not necessary to consider that testimony in detail now. It is sufficient to say that while Broadhead claimed that the money was furnished in consequence of Heist's agreement to transfer the judgment, there was no evidence to show that Mrs. Tobias ever agreed that the judgment should be used for any such purpose. Neither Broadhead nor his wife, nor any one else, gave any such testimony. The question then recurs how could Heist, by any act or declaration of his, subject Mrs. Tobias to any liability growing out of such a use of the judgment against her. Most clearly he held it for one specific purpose only, to wit: the protection of himself against any liability arising from the mere fact of his indorsement. That liability never arose. The note was actually paid by another, and he never incurred any liability as an indorser. Therefore he had no claim under his judgment against Mrs. Tobias to indemnify him against anything. How then can he confer any right upon Mr. Broadhead or his wife to collect the money on his judgment? As he did not possess such a right himself he could not transfer such a right to another. The case is very different from the cases in which a debtor gives a security to his creditor as collateral to the debt. There it is no matter to the debtor who holds the collateral, and inasmuch as it was given to secure the payment of the debt itself, either the creditor or any stranger who buys the claim of the creditor can enforce the collateral for his own benefit. But here is a totally different situation. Heist was only subject to a contingent liability at the best. To protect him against that contingent liability he took and held the judgment. It was the defendant's right as well as his, Heist's, right, that the judgment should be used for that purpose. But when the contingency against which the judgment was given never happened, all right to use the judgment was gone. It was a matter of no consequence to Mrs. Tobias where the money came from which paid off the note. It was none of her concern. She was no party to it, and she was just as much entitled to be released from the judgment as Heist was to be relieved from his indorsement. We are quite clear that upon the undisputed testimony the rule to open the judgment should have been made absolute, and an issue awarded

to try whether anything, and if so what, was due upon the judgment, and if upon the trial of that issue the facts are the same as now appear of record, an instruction should be given to find for the defendant.

The judgment is reversed, the rule to show cause why the judgment should not be opened is made absolute at the cost of the appellee, and the record is remitted for further proceedings.