# State Camp of Penna. of the Patriotic Sons of America *v.* Kelley et al., Appellants.

*Corporations — Officers — Treasurer — Bonds — Principal and surety—Discharge of sureties—Voluntary associations—Effect of incorporation.*

1. A bond for the faithful performance of a treasurer's duty during his present and any subsequent terms to which he may be elected is valid as long as he holds the office.

2. If the bond was given to an incorporated beneficial society, by the treasurer of an unincorporated branch or camp of the association, the subsequent incorporation of the camp will not relieve the sureties on the bond, where it appears that the incorporated camp was identical in name with the unincorporated body; that it was in fact the same body, with the same officers; that there was no change in the duties of the treasurer, who continued to hold the valuable papers of the association, including the bond; that the bond embraced all subsequent terms of the treasurer; and

was conditioned for the faithful performance of all "the duties now required, or which may hereafter be required of him as treasurer aforesaid." The subsequent incorporation was not material to the risk, and, being immaterial, would not release the sureties.

3. In such case, the delivery of the bond to, and its acceptance by, the local camp was sufficient; and averments that the conditions of the bond had been complied with, and that there was no money due thereon, are sufficiently met by an admitted default and bankruptcy of the treasurer.

4. It requires a material change in the duties and responsibilities of an officer or employee to discharge the sureties on his bond.

5. A contract of suretyship, though only enforced according to its strict terms, is nevertheless nothing more than a contract, and must be construed according to the intention of the parties.

*Judgment—Proceedings to open judgment—Pleadings—Principal and surety—Equity—Technical defense—Release of sureties—Subsequent incorporation of voluntary association—Treasurer's bond—Court sitting as chancellor.*

6. An application to open a judgment is equitable in substance, and must show a meritorious defense. The court, sitting as a chancellor, will not grant such an application on mere technical grounds, nor to enable the defendant to interpose a technical defense. It is not a question of what might have been interposed before judgment, but what is sufficient to move the conscience of the chancellor after judgment.

7. In proceedings to open a judgment, the petition and answer comprise the pleadings, and the court grants relief only upon the ground embraced therein.

8. Where a rule is taken by sureties to open a judgment entered on a treasurer's bond of an unincorporated association, incorporated after the bond was given, a suggestion that the incorporation of the association released the sureties will not be considered, if not embraced in the pleading; especially where such defense is merely technical and not entitled to equitable relief.

9. He who seeks relief from a regular judgment, must allege and prove that it is unjust.

Argued March 9, 1920. Appeal, No. 126, Jan. T., 1920, by defendants, from order of C. P. Carbon Co., April T., 1918, No. 94, discharging rule to open judgment, in case of State Camp of Pennsylvania of the Patriotic Order Sons of America v. Charles F. Kelley,

A. F. Snyder and J. A. Fenner. Before BROWN, C. J., STEWART, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Rule to open judgment. Before BARBER, P. J.

The facts are stated in the opinion of the Supreme Court.

The court below discharged the rule. Defendants A. F. Snyder and J. A. Fenner appealed.

*Error assigned* was order discharging rule to open judgment, quoting rule and order.

*Ben. Branch,* of *Freyman, Thomas & Branch,* for appellants.—Where the instrument evidencing the contract of surety is under seal, delivery is essential to its validity.

The incorporation of the association constituted a breach of the bond: Bank of Washington v. Barrington, 2 P. & W. 27; Besinger v. Wren, 100 Pa. 500; Wanamaker v. Shoemaker, 70 Pa. Superior Ct. 473.

*Horace Heydt,* of *Dewalt & Heydt,* with him *Claude T. Reno* and *Balliet & Seidle,* for appellee, cited: Manayunk Trust Co. v. Platt, 221 Pa. 248; People's Bank of California v. Stroud, 223 Pa. 33; Bailey v. Clayton, 20 Pa. 295.

OPINION BY MR. JUSTICE WALLING, April 12, 1920:

This controversy grows out of a bond given to plaintiff by the treasurer of a subordinate branch. The State Camp of Pennsylvania of the Patriotic Order Sons of America, plaintiff, was incorporated by special Acts of February 27, 1867, P. L. 285, and of March 18, 1869, P. L. 396. Thereafter it established a local camp at Weissport, Carbon County, known as Washington Camp No. 122 of the State of Pennsylvania of the Patriotic Order Sons of America, of which defendant, Charles F. Kelley, was duly elected treasurer for the year beginning Febru-

ary 10, 1902. On that day he gave bond to plaintiff in $2,000 for the faithful performance of his duties as such, with appellants as sureties, conditioned: "That if the above bounden treasurer shall and will from time to time, and at all times hereafter, for and during the above-mentioned term of office, and for and during any one or more subsequent terms for which he may hereafter be elected treasurer of the said camp, and until he shall deliver all the property which he may have received as such treasurer, to his successor in office, or to such other person or persons of said camp, as its authorized officers may direct, well and faithfully perform and discharge all and singular the duties now required or which may hereafter be required of him as treasurer aforesaid, by the constitution, charter, local laws, rules and regulations of said camp, at the expiration of said term of office, or at the expiration of any subsequent term for which he may hereafter be elected, and whenever he shall cease to be treasurer, upon request to him or them made, shall make and give unto said auditor or auditors as shall be appointed by the said camp, a just and true account of all such sum or sums of money, goods, and chattels, and other things, as have come unto his hands, charge, or possession, as treasurer aforesaid, during the term above mentioned, or during any subsequent term for which he may hereafter be elected, and shall and do pay and deliver over to his successor in office, or to such person or persons as said camp or its authorized officers may direct, all such balance or sums of money, goods, and chattels, and other things, which shall appear to be in his hands, and due from him to the said camp, then this obligation to be void, or else to be and remain in full force and virtue, and we hereby empower any attorney of any court of record of Pennsylvania, or elsewhere, to appear for us and confess judgment in favor of the above-named obligee for the said sum of two thousand dollars."

The local camp was then an unincorporated association, but was chartered by the court two months thereafter, to wit: in April, 1902. However, the affairs of the society continued the same after as before its incorporation, with the same members, officers, property, etc., and with no change in the duties or liabilities of the treasurer. In fact the bond makes no reference to the status of the local camp as to being incorporated or otherwise, its corporate name being "Washington Camp No. 122, Patriotic Order Sons of America." The valuable papers of the local camp, including the bond, were placed in the custody of Kelley as treasurer and kept by him in the camp's safe or box. By successive reëlections he was continued as treasurer until 1917, when he became bankrupt and it was discovered that he had misappropriated $3,733 of the local camp's funds. Thereupon, by leave of court, judgment for $2,000 was entered on the bond, which appellants petitioned the court below to open, and permit them as sureties to make defense. The petition admits the execution of the bond and that Kelley was elected and continued as such treasurer until 1917; but avers: "That the said bond was never tendered to the said Washington Camp No. 122 nor was it ever accepted by it. That there is no money due on said bond to the State Camp of Pennsylvania of the Patriotic Order Sons of America. That there is no money due on said bond to the said Washington Camp No. 122. That the conditions of the said bond have been duly and fully complied with." Plaintiff filed an answer specifically denying these averments; thereupon testimony was taken and the court below, upon due consideration, discharged the rule to open the judgment; from which we have this appeal.

So far as the case turns upon legal questions and deductions from facts, it comes before us for review upon the merits rather than to see if the chancellor has properly exercised his discretion: Heist v. Tobias, 182 Pa. 442; Babcock v. Day, 104 Pa. 4, 7; Woodward v. Car-

son, 208 Pa. 144; but we find no cause for reversal. A delivery of the bond to and its acceptance by the local camp was sufficient, and of that there is at least prima facie evidence (32 Cyc. 52). In view of the admitted default and bankruptcy of the treasurer, there is no basis either for the averment that the conditions of his bond had been complied with or that no money was due thereon; and the petition exhibits no other ground for relief; hence, as the conditions of the bond are plain and the judgment regular upon its face, there is nothing to warrant disturbing it. A bond for the faithful performance of a treasurer's duty during his present and any subsequent terms to which he may be elected is valid so long as he holds the office: Shackamaxon Bank v. Yard, 150 Pa. 351; Challenge Yearly Ben. Assn. v. Weis, 52 Pa. Superior Ct. 262; and see Appeal of Lane et al., 112 Pa. 499; Black v. Oblender, 135 Pa. 526.

Proceedings to open a confessed judgment are purely equitable in form, wherein the petition and answer comprise the pleadings, and the court grants relief only upon the grounds embraced therein: Carr v. Ætna A. & L. Co., 263 Pa. 87, 93; Fisher v. King, 153 Pa. 3; Wyman & Colegrove's App., 3 Walker 410; Pfaff v. Thomas, 3 Pa. Superior Ct. 419.

The suggestion that the sureties were discharged because of the incorporations of the local camp after the execution of the bond is not in the pleadings and, therefore, not properly raised, but if it were it could not prevail. The bond to plaintiff was expressly for the protection of Washington Camp No. 122, and it was that camp as well after as before its incorporation. It remained the same subordinate branch, and the bond embraces all subsequent terms to which the treasurer may be elected, and is for the faithful performance of all "the duties now required or which may hereafter be required of him as treasurer aforesaid." He did not cease to be such when the camp received a charter, and, as he continued in the same office with the same duties, the

bond remained in force. It requires a material change
in the duties and responsibilities of an officer or em-
ployee to discharge the sureties on his bond: Shack-
amaxon Bank v. Yard, supra; Amer. Telegraph Co. v.
Lennig, 139 Pa. 594.

A case much like the present is Pa. & N. R. R. Co. v.
Harkins et al., 149 Pa. 123, in which the head note
states: "Where one railroad company which had leased
another took a bond with sureties, from one of its em-
ployees; and, subsequently, the two railroads were con-
solidated under the Act of May 16, 1861, and, under a
new name, the same business was continued; held, that
the sureties were liable for the employee's defalcation
after the merger of the two companies."

The cases cited by appellants largely rest upon ma-
terial changes which increased the risk, like Bensinger
v. Wren, 100 Pa. 500, where a banking association was
changed to a life and health insurance corporation, with
the powers of a trust company, whereby the duties of
its cashier (the principal in the bond) became more and
different. Here, the bond was not changed, nor any new
contract made; but appellants' complaint is the change
in the status of the beneficiary; however, that was not
material to the risk, and, being immaterial, it would not
release the sureties: Latshaw v. Hiltebeitel, 2 Penny.
257; Kountz v. Kennedy, 63 Pa. 187; Barclay v. Deck-
erhoff, 151 Pa. 374.

While the contract of a surety cannot be extended be-
yond its terms, it should not be construed so strictly as
to defeat the manifest intention of the parties. "Sure-
ties are as much bound by the true intent and meaning
of the instrument to which they are parties, as princi-
pals": Roth v. Miller, 15 S. & R. 99. A contract of
suretyship though only enforced according to its strict
terms is nevertheless nothing more than a contract and
must be construed according to the intention of the
parties: Fink v. Farmers' Bank, 178 Pa. 154; and see

Young v. Amer. Bonding Co., 228 Pa. 373; Boehmer v. County of Schuylkill, 46 Pa. 452.

An application to open a judgment is also equitable in substance and must show a meritorious defense. The court, sitting as a chancellor, will not grant such application on mere technical ground nor to enable the defendant to interpose a technical defense: McKee v. Verner, 239 Pa. 69; Sullivan v. Sweeney, 189 Pa. 474; Kneedler's App., 92 Pa. 428; Bailey v. Clayton, 20 Pa. 295; Koch v. Biesecker, 7 Pa. Superior Ct. 37. It is an appeal to the equitable powers of the court and should be based on some equitable ground and not on a technical irregularity: Manayunk Trust Co. v. Platt, 221 Pa. 248; 23 Cyc. 723. He who seeks relief from a regular judgment must allege and prove that it is unjust. Here the formal change of the beneficiary from an unincorporated to an incorporated association made no practical difference and, hence, its interposition here is purely technical, as is also the suggestion that the charter omits from the name of the local camp the words "of the State of Pennsylvania," and neither could avail if properly pleaded. Moreover, it is not a question of what might have been interposed before judgment but of what is sufficient to move the conscience of the chancellor after judgment.

In our view of the case it is not necessary to consider what, if any, effect should be given to the act of appellants in securing a counterbond from Kelley and presenting it as a claim against his bankrupt estate. Nor is it necessary to consider the case from the standpoint of the legal as distinct from the equitable plaintiff.

The assignment of error is overruled and the order is affirmed.