## Philadelphia Fixture & Equipment Corp. *v.* Carroll, Appellant.

Argued October 14, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Abraham Wernick,* for appellant.

*Samuel Abramson,* for appellee.

OPINION BY JAMES, J., April 15, 1937:

This is an appeal from the refusal to open a judgment.

On December 7, 1934 plaintiff entered judgment

against defendant on a judgment note, accompanying a bailment lease, for $1,800 dated December 1, 1934. On June 27, 1935 a fi. fa. was issued. Stanley H. Carroll, a brother of the defendant, then filed a property claim with the sheriff. A rule for interpleader was made absolute on November 26, 1935, and the case was listed for trial for March 16, 1936. On March 12, 1936 the defendant filed a petition to open the judgment averring in substance that in October 1934, at the request of plaintiff, who was then installing a bar in defendant's tavern, for the sum of $925, he had affixed his signature to a paper containing a lot of printing and a number of blank spaces; and that plaintiff, without the knowledge, consent or approval of defendant, had inserted in said blanks instead of $900, the sum of $1,800 and further inserted the sum of $180 as monthly payments and the date as December 1, 1934, although the note was signed in blank during October, 1934; and that all moneys due by defendant to plaintiff had been paid. An answer was filed and depositions were taken. The rule was discharged on March 26, 1936, and the defendant now takes this appeal.

Harry Carroll, the defendant, testified that in the summer of 1934, he was planning a second-floor taproom as an addition to his place of business, known as Old Glory Tavern, at 52nd and Walnut Streets in Philadelphia, and had engaged Louis Magaziner as architect to prepare plans. In August, 1934 he first discussed with Newton Burrison, treasurer of the plaintiff company, in regard to equipment and furnishings; that in October Burrison stated to him he could supply a bar as drawn by the architect for $900; that he could not do the decorating, but had a friend who would. Burrison brought R. W. Kuehne, of the Kuehne Decorative Studio, out to the tavern, and it was agreed that the extra work was to be done for $1,700. Later on, about October 15, 1934, Kuehne brought out an agreement

for $1,700 to be paid in instalments; that he signed this agreement but never received a copy of it. On October 19, 1934 he called upon Burrison at his place of business at 1025 Arch Street, Philadelphia, where he delivered eight $100 checks, postdated, the first dated October 22, 1934. At that time, he was informed by telephone that his bartender had not reported for work. Since he was anxious to return to his work, and since the written order was not yet prepared, he signed a blank order and a blank judgment note, duplicate and original, and left immediately. He further testified that he had paid off the entire $900 which was due the plaintiff company and denied that he had been to the plaintiff's place of business on December 1, 1934, or had signed any papers on that day, and that the paper, which he in fact signed in October, was in blank. He denied that he had authorized anyone to fill in the blanks of the bailment lease and note with the figures "$2,600," and denied any agreement that the plaintiff company was to be paid for Kuehne's work. He further testified that his brother had paid Kuehne $300 on Kuehne's contract, and that $1,400 is still owing to Kuehne.

Defendant called Newton Burrison as for cross-examination, who testified that his company had undertaken the entire contract at the request of defendant and Kuehne for the sum of $2,600; that George Borison and I. H. Kolman were present when the lease was signed on December 1, 1934; that the lease was completely filled in, including the figures "$2600"; that the only charge against the defendant in plaintiff's books was for $925 and the books carried no charge against the defendant for $2,600, or against Kuehne. He admitted receipt of $900 up to December 1, 1934. The landlord of the premises at 1025 Arch Street testified that the plaintiff company vacated the premises prior to November 28, 1934, although the lease had

expired October 30, 1934, and the key had been surrendered and the place locked. A representative of the Philadelphia Electric Company which supplied the light, stated that the electric current was shut off November 29, 1934; and a representative of the Bell Telephone Company testified that the phone was disconnected on November 26, 1934. The elevator operator on the premises testified that the plaintiff company vacated the premises before November 28, 1934, and that the portion of the premises formerly occupied by that company was locked. Alfred Volker, whose firm supplied fixtures and plaster in the amount of $470, charged the supplies to Kuehne and had no charge against the plaintiff. Samuel Heller, who did the painting, stated that he was paid by Kuehne and claimed his pay from Kuehne, although he had a verbal understanding with Burrison that he would guarantee the payment. L. W. Melcher, a handwriting expert, testified that defendant's signature to the lease and note were in one ink, and the writing in the body of the instrument was in another ink, and was written during a period two weeks to two months after defendant's signature was written.

In rebuttal, the plaintiff called Newton Burrison, who testified that the lease and notes were not signed on October 19, 1934, but on December 1, 1934; that the lease and note were filled in at the time they were signed by defendant. He stated that it was understood by Carroll that he was to sign a contract for $2,600 and that plaintiff was to take the entire contract. Louis Magaziner, defendant's architect, testified that Carroll accepted the estimate of $2,600 for the entire job, and that Burrison then stated that he was taking the entire contract and subletting a part, to which defendant agreed. George Borison testified that on December 1, 1934 he was at 1025 Arch Street and witnessed the signing of the papers by defendant and that the papers

at that time had been completely filled in. R. W. Kuehne, called by plaintiff, testified that it was agreed that the entire work be done under one contract for $2,600; that Burrison undertook the contract, that $1,300 is still due to the plaintiff by defendant, but that defendant owed Kuehne nothing.

An application to open a judgment is equitable in substance, and must show a meritorious defense. The court, sitting as a chancellor, will not grant such application on mere technical ground, nor to enable the defendant to interpose a technical defense. It is an appeal to the equitable powers of the court and should be based on some equitable ground and not on a technical irregularity. He who seeks relief from a regular judgment must allege and prove that it is unjust. It is not a question of what might have been interposed before judgment, but of what is sufficient to move the conscience of the chancellor after judgment: *State C. of Pa. P. S. of A. v. Kelley*, 267 Pa. 49, 110 A. 339. And if, on the pleadings and proofs, doubt exists as to the real justice and equity of the case, the action of the court below in refusing to open the judgment will not be reversed on appeal: *Reidlinger v. Cameron*, 287 Pa. 24, 134 A. 418. A defendant who seeks to strike down his solemn written obligation must present evidence which is clear, precise and indubitable: *Certelli v. Braum*, 294 Pa. 488, 144 A. 403. The exercise of the jurisdiction upon rules to open judgments, entered on warrants of attorneys, has always been held to be within the sound discretion of the courts. It is a mistake to suppose that the court cannot judge the weight of the evidence, and the credibility of witnesses, but must in every case where there is a conflict of testimony, send the case to the jury: *Spanko v. Trisick*, 307 Pa. 166, 160 A. 718. The opening of a judgment rests in the sound discretion of the court, and, in general, will not be reversed unless the evidence is such that the

jury ought and probably would find in favor of the defendant: *Landis v. Hoch,* 108 Pa. Superior Ct. 285, 164 A. 828. The question for decision by the appellate court is whether, in view of all the evidence, the action of the court below constituted an abuse of discretion: *Helzlsouer v. Golub,* 306 Pa. 474, 160 A. 118; *Rambo B. & L. Assn. v. Dragone,* 311 Pa. 422, 166 A. 888; *George v. George,* 318 Pa. 203, 178 A. 25.

In its opinion discharging the rule, the court below said: "Defendant admits that he owes the amount claimed to somebody. Defendant admits that he signed the instruments in question. Defendant delayed a long time after notice before filing his petition to open judgment. Defendant's evidence indicating that the body of the instrument was fraudulently filled in is flatly contradicted by credible evidence on behalf of the plaintiff. The only evidence of defendant which gives us any difficulty is that of the handwriting expert. This testimony is entitled to great weight, but it is only opinion testimony, and certainly is not superior to credible fact testimony. For the foregoing reasons, we do not think that justice requires the opening of the judgment, and consequently the rule was discharged."

As far as affecting the liability of this appellant, the practical question, involved in this appeal, is whether the amount, concededly due by him on his contract, shall be paid by virtue of the judgment entered, or, after suit, by R. W. Kuehne, to whom he alleges the money is owing. In determining the credibility and justice of his claim, his failure to pay or offer to pay the money to Kuehne was a material fact to be considered with all the other phases of the case. In the event that the judgment is opened and the jury find for the defendant, it is doubtful whether Kuehne has any right of action, as he disavowed any contractual obligation with the defendant or that the defendant is indebted to him in any amount as a result of the work done. In addition,

appellant made no disavowal of the judgment until ten months after execution had been issued and four days before the date of the trial of the sheriff's interpleader, in which his brother was the claimant. Under such circumstances, with the flat contradiction of appellant on the material questions involved, we are not convinced that the action of the court below, in refusing to open the judgment, constituted an abuse of discretion.

Order affirmed.