## Roper *v.* Scevcnik et al., Appellants.

Argued April 21, 1937.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Max M. Bergad* with him *Alex. McConnell,* for appellants.

*Carroll Caruthers,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

Defendants appeal from an order of the court below refusing to open a judgment entered May 26, 1934 against Jek Scevcnik upon a note dated May 23, 1934, in the sum of $1,500.

At the time of the execution of the note, the maker and his wife, Angela, were having domestic difficulties due to the husband's inability to work, he being blind in one eye and partially blind in the other. The husband left the home on December 5, 1934, and on December 11, 1934 he filed a libel in divorce. On February 28, 1935 a decree was granted on the grounds of cruelty and indignities. He died April 22, 1935. On August 10, 1935 Joe Roper, plaintiff, issued a scire facias against Frances Scevcnik, as administratrix, and the children of deceased, as heirs at law, and Angela Scevcnik, as terre tenant. For want of an appearance, judgment was entered on January 10, 1936, and on the same day a fieri facias was issued. On February 3, 1936 Frances Scevcnik, in her own behalf and as administratrix, and on behalf of her brothers and sisters, as heirs at law, presented a petition for a rule to open the judgment, alleging in substance that Jek Scevcnik gave the note without a full bona fide consideration and to carry out a scheme to deprive his wife and heirs of any interest in his estate, to which an answer was filed denying these allegations. A commissioner was appointed, who after hearing, filed a report recommending that the rule be discharged. The court of common pleas dismissed exceptions and discharged the rule.

The execution of the note was witnessed by John Pushnick and Anton Pregrad in the office of an attorney in the City of Greensburg, but petitioners only called John Pushnick, although the other witness attended the hearing and the attorney was available. Pushnick, a janitor in a bank building, testified in part as follows: "A. I never knowed Jek Scevcnik before

he come one day to the building here. I was standing outside. He was looking for a man by the name of John Pushnick. Q. Where do you work? A. Maddas Bank Building, janitor. I told him 'you are talking to him, I am John Pushnick, what do you want?' He said, 'A man by the name of Frank Sume sent me here.' I asked him, 'What do you want?' He said, 'Will you please come with me to Lawyer Silvis.' He told me the story, he say, 'I want to go to Lawyer Silvis and explain to him what I want to do.' He said, 'Joe Roper tell Jek Scevcnik I gone to keep you so long as you live.' He said, 'My family treat me bad, I might as well have peace to the last time.' I say, 'Alright.' Then I went to Lawyer Silvis and I explained to him and he said he 'would like to help get a judgment note or something that man don't keep me for nothing when I die he gone to get paid for it.' He said, 'He help me out with money, how much I don't know.' So Silvis told him, 'You can make a judgment note.' He said, 'I don't know what a judgment note is.' So Mr. Silvis give him a judgment note and he take it down to Herminie and they fill it up like it is filled up here. Then about a week or two weeks, I don't remember because I was not interested in the case, he come back— and I think that is the gentleman there and his wife (indicating Joe Roper and Anthony Pregrad) and that man and when they had signed judgment note I think that gentleman come over and said, 'I need a witness.' So I went over and I signed my name and they went on. What they did I don't know anything more. I don't know the family. That was the first time and the second time when they come with the judgment note. Q. Were you both present when Jek made his signature? A. No I was not there. Q. Jek was present there? A. Yes, Jek Scevcnik and that man. Q. You both put your names down as witnesses? A. They had all there when they come there and they want

me for witness and I did...... A. He just told me the family don't treat him good and Roper help him out every place and he gone to keep him there long as he gone to live and he don't want Roper to keep him for nothing and wants to make so that idea he gone to get his money back. Q. Did he tell you Joe Roper helped him out and his family didn't—isn't that right? A. Yes."

Mrs. Lulu Duvall, employed by the Mother's Assistance Board, in making an investigation of the deceased's application for a pension (later granted) on September 12, 1934, learned from the wife that the judgment note had been entered, the wife having obtained this information from a statement sent to her by the attorney who subsequently appeared for her in the divorce proceeding. At this interview, the deceased told her that he had borrowed $40 from Roper and that he gave the note to Roper because his wife was trying to put him in an insane asylum and he did not wish her to be able to get the house. She interviewed Roper, who told her that deceased had borrowed $50 to pay the costs of a trial at Greensburg, and at various times during a period of several years borrowed sums of $5 to $10, in all about $200. Sophia Patscha testified that early in December, 1934, after deceased had left his wife, he promised to put his wife's name on the deed if she would pay what was due Roper. Later deceased stated he was afraid to place the title in his wife's name. It further appeared that from early in December, 1934 until his death, deceased lived with Joe Celick, and they shared their expenses equally. In passing upon the testimony, the court below concluded as follows: "The weight of the testimony is upon the side of the plaintiff in this judgment and the weight of the circumstances which are undisputed are on the side of the plaintiff, and there appears to be no evidence suffi-

cient to open the judgment and submit the same for the consideration of a jury."

In this court appellants argue that the judgment should be opened and an issue awarded to determine: First, whether there was a failure of consideration; and, second, what amount of money had actually been loaned by the plaintiff below. They concede that the wife, having been divorced, had no interest in the estate of the husband at the time of the presentation of the petition to open the judgment, but argue that the administratrix and the heirs of Jek Scevcnik had a right to challenge the amount of the note in excess of $200— the amount fixed in plaintiff's admission to Mrs. Duvall. In view of appellants' admission, it is unnecessary to discuss the question of a fraudulent scheme to cheat the wife, and we know of no rule, nor has any such rule been referred to us by counsel, which prevented the father from disposing of his property either by way of a direct grant, or by the execution of an obligation which his heirs had no right to question, and, therefore, our discussion shall be confined to whether the court abused its discretion in refusing to open the judgment on the ground of failure of consideration.

"A petition to open a judgment is addressed to the sound discretion of the court below whose duty it is to determine whether the petitioner has a just defense to the claim upon which the judgment is based: *Jenkintown Nat. Bank's App.*, 124 Pa. 337; *Warren Sav. Bk. & Tr. Co. v. Foley*, 294 Pa. 176; *Spanko v. Trisick*, 307 Pa. 166. When an appeal is taken from an order refusing such petition the only question before the appellate court is whether, in view of all the evidence, the action of the court below constitutes an abuse of discretion: *Rambo B. & L. Assn. v. Dragone*, 311 Pa. 422; *Olney Bank & Tr. Co. v. Gettlin*, 318 Pa. 76": *Fidelity Trust*

*Co. v. Garrett,* 327 Pa. 305; 194 A. 398; *Phila. F. & E. Corp. v. Carroll,* 126 Pa. Superior Ct. 454, 191 A. 216.

The averment of the petition, "that Jek Scevcnik did not receive any consideration whatsoever when he executed and delivered said note to Joe Roper," is flatly contradicted by the note itself and by the testimony submitted by the petitioners; consequently, petitioners' right to open the judgment, on the ground of failure of consideration, can only be based upon a later allegation in the petition that it was given "without a full bona fide consideration." The note itself, being under seal, imports a consideration, but, in addition thereto, the testimony establishes that the note was given for a real consideration. It may be that the actual consideration cannot be definitely fixed in terms of dollars and cents, but other factors must be considered, as it appears that deceased was moved in his voluntary execution of the note, not only to protect the plaintiff for the moneys that he had already advanced and the help which he had given, but for the assurance that plaintiff would render him assistance as long as he would live, although no assistance was shown other than deceased stayed with plaintiff about a week. The note was given in May, 1934 and deceased did not die until April, 1935, yet no question was ever raised by him. If deceased was satisfied with the arrangement, his administratrix and heirs have no right to question it. We fully recognize the rule that want of consideration is no defense to a bond or note under seal, but failure of consideration may be: *Gsell v. Helman et al.,* 108 Pa. Superior Ct. 258, 164 A. 853; *Piper v. Queeney,* 282 Pa. 135, 127 A. 474; but under the proof submitted by the petitioners, to what extent, if any, there was a failure of consideration is left entirely to conjecture and doubt. Under such proof, we are satis-

fied that no abuse of discretion has been shown in the court's refusal to open the judgment.

Decree affirmed.