THE SUPERVISORS OF RENSSELAER COUNTY *v.* BATES.

Money borrowed for a public purpose and on the credit of the county by the agent of a board of supervisors, under its resolution passed, without any legal authority but not in violation of public policy or of positive statute, may be recovered by the board of such agent or his sureties.

But where the agent exceeded the power thus conferred, and, by false representations to the lenders, obtained the loan of a larger amount than was authorized, and embezzled such excess, the sureties are not liable therefor to the county, although the board of supervisors afterwards voluntarily pay to the lenders the sums borrowed from them without authority.

The lenders were bound to ascertain at their peril when the authority of the agent was exhausted, and the supervisors could not, by repaying to them money which had never come to the use of the county, and for which it was not liable, extend the contract of the sureties to answer for the sums which he should borrow under their authority.

APPEAL from the Supreme Court. The action was upon a bond, bearing date January 20, 1858, signed by the defendant as surety, and conditioned that one Sherry should

faithfully pay and account for all moneys that should come to his hands as treasurer of the board of superintendents of the House of Industry of the county of Rensselaer. The breach assigned in the complaint was that Sherry, after the making of the obligation, and while he was such treasurer, &c., received of several persons, specifically named with the sums received from each, money amounting in the aggregate to $1893.20, for which he had failed to account.

The defendant, in his answer, denied that any of the sums of money stated in the complaint came to the hands of Sherry as treasurer, &c., or belonged to the plaintiffs, or that they had any interest therein, and averred that the plaintiffs, voluntarily and without any legal liability therefor, after Sherry had ceased to be treasurer, assumed to pay the several sums, and to the several persons mentioned in the complaint. On the trial at the Rensselaer Circuit before Mr. Justice Parker, a jury having been waived, it was proved that Sherry, who had been appointed treasurer of the board of superintendents of the Rensselaer County House of Industry, was, by a resolution of the board of supervisors of said county, passed December 1, 1847, authorized to borrow on the credit of the county, such sum or sums not exceeding $3000, as might from time to time become necessary for the purpose of defraying the expenses of the House of Industry. On the 4th of December, 1847, a resolution was passed, in the same terms, authorizing Sherry to borrow the further sum of $3500 for the same purpose. After having borrowed the full sum of $6500, and thus exhausted his power under the resolution, he borrowed the several sums mentioned in the complaint, giving to the lenders respectively notes, each of which was signed by him as treasurer, &c., and purported upon its face to be given in pursuance of the resolutions above mentioned. He represented to the lenders, at the time of obtaining each loan, that he had not yet obtained the $6500 which he was authorized to borrow. Sherry appropriated to his own use the money

thus borrowed; but the board of supervisors, without suit, directed the payment of the notes given by him, and they were accordingly paid by the county treasurer before the bringing of this action. The defendant moved for a nonsuit which was refused by the court, and he took an exception. The judgment entered for the plaintiffs was, on appeal, affirmed by the Supreme Court at general term in the third district, and the defendant appealed to this court.

*John H. Reynolds,* for the appellants.

*Nicholas Hill,* for the respondents.

HARRIS, J. This case is remarkable for the series of illegal proceedings which it presents. The board of supervisors were authorized to appoint superintendents of the House of Industry, and to raise money by tax to defray its annual expenses. This was the extent of their authority. The money thus to be raised was to be paid to the county treasurer, to be drawn out of his hands upon the orders of the superintendents. No provision is made in the act authorizing the establishment of the House of Industry for the appointment of a treasurer of the board of superintendents; nor was such an office made necessary. The county treasurer was to act as such treasurer; and yet it appears that "on or about the 14th of December, 1847, James Sherry was duly chosen and appointed a superintendent of the House of Industry, and treasurer of the board of superintendents." Whether the latter appointment was made by the board of supervisors, or the superintendents, does not appear. In either case the appointment was equally unauthorized.

Before the appointment of Sherry, the board of supervisors, without even the color of authority, had passed two resolutions by which "the *treasurer* of the House of Indus-

try " was authorized to borrow on the credit of the county, such sums of money as might from time to time become necessary, to the amount of $6500, for the purpose of defraying the expenses of the House of Industry.   Clothed with the authority of these unauthorized resolutions, the new treasurer, without having given any security, went into the market to borrow money.   Before the twentieth of January he had succeeded in obtaining upwards of $3000.   He then gave the bond upon which this action is brought, by which the defendant, as one of his sureties, became responsible that he should discharge the duties of his office as treasurer of the board of superintendents, and account for and pay over all moneys which might come into his hands as such treasurer.   After this he continued to borrow, using the resolutions of the board of supervisors as his authority, until in October following the aggregate amount of his loans was considerably more than $20,000.   It was admitted on the trial that before any of the moneys for which this action is brought had been obtained by Sherry he had borrowed the full amount specified in the resolutions.

But, however illegal the proceedings of the board of supervisors may have been, Sherry was not at liberty to deny their validity.   He accepted the appointment of treasurer, and undertook, as the agent of the board, to execute the power conferred upon him.   The defendant also, as the surety of Sherry, agreed with the board of supervisors that he should faithfully account for such monies as should come into his hands as such agent.   Though called treasurer, he was in fact the agent of the board of supervisors; and both he and his sureties are precluded from questioning the power of the board, as principals, to confer upon him the authority under which he acted.   To the extent, therefore, that Sherry acted within the limits of the power which the board of supervisors assumed to confer upon him, the defendant, as surety, would be clearly liable. ( *The People* v. *Norton*, 5 *Seld.*, 176; *The State of New-York* v. *The City of Buffalo*, 2

*Hill*, 434.) In the latter case, the commissary-general of the state had, without authority, loaned to the city of Buffalo two hundred stand of arms, and had taken a bond to the state conditioned to return the arms when called upon to do so. The action was brought upon this bond. It was held that though the loan was unauthorized, so that the state might have sued directly for the property, yet as the transaction was not a violation of any positive law, but merely an excess of authority, the state might also affirm the act and maintain an action upon the contract.

So, in this case, the appointment of Sherry as treasurer and taking from him security for the performance of his duties was not authorized by law, nor on the other hand was there any law against it. No positive statute, no rule of public policy was violated by taking the bond. As between the board of supervisors and Sherry, it was the ordinary case of a principal receiving from his agent security for the faithful discharge of the duties of his employment.

But Sherry was a special agent. His power was defined and limited by the resolutions under which he acted. He was authorized to borrow for the supervisors $6500 and no more. Those who dealt with him, apprised as they were, by the resolutions under which he acted, that his authority was limited, were bound to ascertain for themselves and at their peril whether or not his power to borrow had already been exhausted. The fact that the agent made false representations on the subject would not aid those who trusted to those representations in establishing the liability of the board of supervisors. The question would be, after all, whether the loan was authorized; and as the fact is conceded that the whole amount which Sherry was authorized to borrow had been obtained before these moneys were borrowed, it follows that the board of supervisors were not liable. They were obtained without the authority of the board and never came to their use.

The Supervisors of Rensselaer *v.* Bates.

The question then arises whether, as the board of supervisors have voluntarily paid these moneys, an action can be maintained to recover the amount so paid from Sherry and his sureties. As against Sherry, I can see no objection which could be successfully urged against the action. He assumed to borrow the money as the agent and on behalf of the board, and would not be allowed to deny his agency; but in respect to the sureties I think it is otherwise. They are precluded by no such estoppel. When they executed the bond upon which it is now sought to make them liable Sherry had received authority to borrow $6500. They agreed to become answerable that so much of this sum as he might succeed in obtaining should be faithfully expended or accounted for by him. This was the extent of their undertaking. The board of supervisors had no right voluntarily to pay debts which had been fraudulently contracted by Sherry and for which he alone was liable, and then call upon his sureties for reimbursement.

I am therefore of opinion that the judgment of the Supreme Court should be reversed and a new trial granted, with costs to abide the event.

All the judges concurring,

Judgment reversed and new trial ordered.