KANSAS CITY HYDRAULIC PRESS BRICK CO. v. NATIONAL SURETY CO.

(Circuit Court, W. D. Missouri, E. D. December 24, 1906.)

No. 3,113.

1. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The question of the construction and validity of a bond given in conformity to the requirements of a state statute is one of general law, as to which a federal court is not controlled by a decision of the state courts, but must exercise its independent judgment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 950–971; state laws as rules of decision in federal courts, see Wilson v. Perrin, 11 C. C. A. 71, and Hill v. Hite, 29 C. C. A. 553.]

2. PRINCIPAL AND SURETY—CONTRACTOR'S BOND TO PAY FOR LABOR AND MATERIALS—LIABILITY OF SURETY.

The surety on a bond given by a contractor for public work, as required by law, conditioned for the payment of indebtedness for labor and materials furnished in the course of the work, is not released from liability for a claim for material because the work was not completed by the time required by the contract, and such material was furnished thereafter.

3. BONDS—CONTRACTOR'S BOND TO PAY FOR LABOR AND MATERIAL—VALIDITY.

A bond given by a paving contractor under Gen. St. Kan. 1905, §§ 5578, 5579, which require a bond to be taken from every contractor for public work, conditioned that he shall pay all indebtedness contracted for labor or material furnished in the construction of such work, is not based on the contract between the contractor and city as a consideration, nor required for the protection of taxpayers or the public, but for the benefit of persons who may furnish labor or material, and in an action on the bond by such a person it is no defense that the contract with the city was invalid because not let on competitive bids as required by statute.

4. LIMITATION OF ACTIONS—ACTION ON CONTRACTOR'S BOND—KANSAS STATUTE.

Gen. St. Kan. 1905, § 4890, which provides that "if any action be commenced within due time and a judgment thereon for the plaintiff be reversed or if the plaintiff fail in such action otherwise than on the merits, and the time limited for the same shall have expired, the plaintiff * * * may commence a new action within one year after the reversal or failure," as construed by the Supreme Court of the state, applies to an action on a bond given by a contractor for public work under sections 5578, 5579, of such statutes, to secure payment for labor or material furnished for such work which is required by the latter section to be commenced within six months from the completion of such work.

At Law. On demurrer to answer of defendant, National Surety Company.

This was an action on bonds given by a contractor for the paving of certain streets in Kansas City, Kan., to recover about $7,000 for

brick furnished by plaintiff and used in the work. The answer demurred to is as follows:

The defendant, National Surety Company, for its separate answer to the first cause of action in plaintiff's petition says:

(1) It denies each and every allegation in said petition made or contained, except the execution of the saving contracts and bonds mentioned in the petition.

(2) For another and further answer and defense, this defendant says that at the time of the execution of the contract between W. W. Atkin and the city of Kansas City, Kan., described in plaintiff's petition, it was provided by section 747 of the General Statutes of Kansas 1901 that before any work of the character provided for in said contract should be commenced sealed proposals therefor should be invited by the city of Kansas City, and said work should be done by contract let to the lowest and best bidder. The purpose of the said provisions of the statute was to require competition in all such work.

The Diamond Brick & Tile Company at all the times mentioned in plaintiff's petition, and for a long time prior thereto was, and now is, engaged largely in the business of manufacturing and selling vitrified paving brick for use in paving streets of cities and towns. It had the exclusive sale of all said brick manufactured by it, and it alone had the right to and did sell said brick to parties engaged in the business of paving with them streets in cities and towns. Said brick had become known as, and were generally called in the city of Kansas City and vicinity, "Vitrified Paving Brick, Diamond Brand." At all said times mentioned other kinds and makes of vitrified paving brick were manufactured and sold in the city of Kansas City and vicinity, and were used in paving streets of cities and towns, equal in all respects to the brick manufactured and sold by said Diamond Brick & Tile Company. Said other kinds and makes of brick were fully up to all the tests and standards established by the authorities of said city of Kansas City for paving brick, and were as easily obtainable in the markets of said city as said brick made by said Diamond Brick & Tile Company. Some time prior to the execution of the contract described in plaintiff's petition, and prior to the passage of the ordinance authorizing the doing of the work out of which this controversy has arisen, the Diamond Brick & Tile Company circulated and caused to be circulated among the resident owners of the lots and lands fronting upon Fifth street, a street in said city of Kansas City, between Central avenue and Euclid avenue, asking that the proper authorities of the said city cause said street to be paved with vitrified paving brick, Diamond brand, the manufacturer of said Diamond Brick & Tile Company, and procured a majority of said resident landowners to sign said petition. Its purpose in circulating and causing said petition to be circulated and signed as aforesaid was to procure the paving of said street with its brick, of which it had the exclusive manufacture and sale, to furnish such brick for such purpose, and to prevent competition as to the brick to be used in paving said street, as required and provided by the statutes of the state of Kansas, as aforesaid. Thereafter said Diamond Brick & Tile Company, in furtherance of said purpose, requested and procured the authorities of the said city to have enacted Ordinance No. 4680 of said city, which provided that said street should be paved with "No. 1 vitrified paving brick, Diamond brand," which was duly enacted. Said Ordinance No. 4680 was approved on September 11, 1901, and was entitled, "An ordinance providing for the paving of Fifth street from Central avenue to Euclid avenue." The work or improvement directed by said ordinance was of the character described in the provisions of said statute of the state of Kansas as hereinbefore referred to, and under the said provisions it was the duty of the authorities of said city to have so acted as to have had competition in making said improvements in all respects and every single detail thereof, including the materials out of which said improvement was to be constructed. Said ordinance violated said provisions of said statute by absolutely preventing all and any competition as to the brick out of which said improvement should be constructed, and in that it required absolutely that it should be of the manufacture of the Diamond Brick & Tile Company and sold

exclusively by it. After the enactment of the said ordinance said city entered into a contract with the defendant W. W. Atkin, who was solicited by said Diamond Brick & Tile Company to bid thereon, for making said improvement in pursuance of said illegal ordinance; and, in compliance therewith, said contract also provided that said pavement should be made of the vitrified paving brick, exclusively manufactured and sold by the Diamond Brick & Tile Company. The Diamond Brick & Tile Company circulated said petition and obtained the signatures of property owners thereto, requested and procured the council to enact said ordinance, and found and induced the contractor to bid on said work and obtain said contract, for the purpose of selling its brick for such work, in such manner that it would be impossible for any other kind of brick to be used, and without its active efforts to that end said work would not have been done or said contract made. By reason of the premises said ordinance and said contract are absolutely void in whole and in part, and the bond sued on herein, being founded on said contract, is also absolutely void in whole and in part. If the plaintiff sold any of the material described in its petition to the defendant W. W. Atkin, and delivered the same for the work described in the contract mentioned in plaintiff's petition, such sale and delivery were made with full knowledge of the facts hereinbefore set forth. Wherefore, having fully answered, defendant prays to be discharged with its costs.

(3) For another and further answer and defense herein, this defendant says that said contract described in plaintiff's petition, between W. W. Atkin and the city of Kansas City, provided that the work described therein should be begun within 10 days after written notice so to do should have been given to said W. W. Atkin by the city engineer of the said city of Kansas City, and that said work should be completed within 60 days thereafter. Such notice was given by said city engineer to the said W. W. Atkin on, to wit, September 15, 1902. But this defendant says that, if any of the material described in the plaintiff's petition was furnished to the defendant W. W. Atkin for said work, said material, and each and every part thereof, was, without this defendant's knowledge or consent, furnished more than 60 days after said notice was given by said city engineer to said W. W. Atkin, and more than 70 days after said notice had been given, and long after said contract had expired, and that, therefore, there is no liability on the part of this defendant on said bond. Wherefore defendant, having fully answered, prays to be discharged, with its costs.

(4) For another and further answer and defense herein, defendant says the work described in plaintiff's petition was completed before May 5, 1903, and more than six months prior to the institution of this suit, and plaintiff's cause of action, if any it had, has been barred by the provisions of section 5131 of the statutes of the state of Kansas, which provides that a suit on the bond sued on in this case must have been commenced within six months after the completion of the work.

(5) For another and further defense herein, this defendant says that at all times herein mentioned the city of Kansas City, Kan., was a city of the first class, with a population of more than 25,000 people; that by section 1 of chapter 81 of the Laws of Kansas of 1899 (Gen. St. Kan. 1901, § 730), it was provided that no resolution for the paving or repaving of any street should be valid unless a petition asking such improvement should have been ordered spread upon the journal of said city, which petition must have been signed by the resident owners of not less than one-half of the feet fronting or abutting upon such street to be improved. This defendant says that no such petition was ordered spread upon the journal in this case, nor was any legal petition ever procured for such pavement; but this defendant says that the pretended petition referred to in paragraph 2 of this answer (the allegation of said paragraph 2 being made a part hereof, as though fully incorporated herein) was fraudulent and void for the following reasons: For the purpose of procuring signatures to said petition, and to prevent competition as to the brick to be used in paving said street, as required by the statutes of the state of Kansas, as hereinbefore stated in said paragraph 2 of this answer, plaintiff and Diamond Brick & Tile Company, without the knowledge or consent of this defendant, secretly and fraudulently hired and

paid numerous resident owners of the feet fronting or abutting upon such street to sign said petition, whereby there was procured, what could not have otherwise been procured, a pretended majority of the feet fronting or abutting upon such street belonging to resident property owners. Defendant says that, without such signatures so secretly and fraudulently procured, said petition would not have contained a requisite majority of the feet fronting or abutting upon such street belonging to resident property owners. By reason of the premises said petition and the resolution, ordinance, and contract founded thereon are absolutely void in whole and in part, and the bond sued on herein, being founded on said contract, is absolutely void in whole and in part. If the plaintiff sold any of the material described in its petition to the defendant W. W. Atkin, and delivered the same for the work described in the contract mentioned in plaintiff's petition, such sale and delivery were made with full knowledge of the facts hereinbefore set forth. Wherefore, having fully answered, defendant prays to be discharged with its costs.

(6) The defendant reavers all the allegations of paragraphs 1, 2, 3, 4, and 5 hereof the same as if specifically set forth herein. This action cannot be maintained for the reason that the alleged cause of action, if it existed at all, is given by and arises out of sections 1 and 2 of chapter 179 of the Laws of Kansas of 1887, now appearing as sections 5578 and 5579 of the General Statutes of Kansas 1905, which sections provide:

"That whenever any public officer shall under the laws of the state enter into contract in any sum exceeding one hundred dollars, with any person or persons, for purpose of making any public improvements, or constructing any public building, or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Kansas, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

"That such bond shall be filed in the office of the clerk of the district court of the county in which such public improvement is to be made or such building is to be erected; and any person to whom there is due any sum for labor or materials furnished, as stated in section one of this act, or his assigns, may bring an action on said bond for the recovery of said indebtedness: provided, that no action shall be brought on said bond after six months from the completion of said public improvements or public buildings."

But these sections make as a condition to a right of recovery that no action on the bond shall be brought unless within six months after the completion of the public improvement mentioned therein or covered thereby, and such public improvement was in this instance completed more than six months prior to the institution of this suit. Wherefore, having fully answered, defendant prays to be discharged, with its costs.

Botsford, Deatherage ,& Young and McFadden & Morris, for plaintiff.

Frank Hagennan, for defendant.

CARLAND, District Judge. The above cause has been submitted to the court upon the plaintiff's demurrer to the second, third, and fifth paragraphs of defendant's answer. The grounds of demurrer are that said paragraph do not allege facts sufficient to constitute any defense to the plaintiff's cause of action. There was some question at the argument as to whether the demurrer fairly raised the question of the statute of limitations, but the case by agreement of counsel has been submitted to the court on the theory that the demurrer of the plaintiff did raise the question as to whether or not plaintiff's cause of action had been barred by the statute of limitations at the time said action was commenced. The plea of the statute of limitations appears in paragraph 6· of defendant's answer, and there is no reference to said

paragraph in plaintiff's demurrer; but, as counsel have agreed in open court that the record may be amended so as to raise the question, the same will be considered on this hearing. So far as paragraph 3 of defendant's answer is concerned, the demurrer of the plaintiff thereto is sustained on the authority of Guaranty Company v. Pressed Brick Company, 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242.

We will now consider the illegality of the contract or contracts entered into between W. W. Atkin and the city of Kansas City, Kan., for the paving of certain streets in said city, and as to how far the illegality of said contracts affect the contracts upon which plaintiff bases its right to recover from the defendant. In so far as the illegality of the contracts made between W. W. Atkin and the city of Kansas City, Kan., are concerned, we are bound by the decision of the Supreme Court of Kansas in the case of the National Surety Company of New York v. Hydraulic Pressed Brick Company (Kan.) 84 Pac. 1034, as the decision of this question involved the construction by the Supreme Court of Kansas of section 747 of General Statutes of Kansas 1901. But this court is not bound by the decision cited, in so far as it holds that no recovery can be had upon the contracts sued upon by plaintiff in this action, for the reason that that question is one of general jurisprudence and upon which this court is bound to exercise its independent judgment.

In the first place, we will consider the language of General Statutes of Kansas 1901, § 5130, under and by virtue of which the bonds themselves were given. It appears beyond any question that the bonds were given for the benefit of one furnishing labor or material. Section 5130 provides that the bond shall be "conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished," etc. The bonds in controversy were conditioned:

"Now, therefore, if the said W. W. Atkin shall promptly pay and discharge all labor and material bills incurred in the prosecution of said work, then the above obligation to be void, otherwise to be of full force and effect."

It would be idle to claim that a bond executed under the section of the statute referred to, or that the bonds upon which recovery is sought, would authorize the recovery of a single dollar, except for the benefit of one who had furnished labor or material, so that, when the Supreme Court of Kansas in the case cited decided that the statute of Kansas which requires competition in the letting of contracts for public improvements was passed by the Legislature of said state to protect the taxpayer and the public, it by no means followed from that decision that the statute which authorized the giving of these bonds in controversy was passed for the benefit of the public and the taxpayer. The best source of ascertaining the intention of the lawmaking power is from the language of the law itself, and the law says that section 5130 was passed for the benefit of one who furnished labor and material in the construction of public improvements. The reason for this legislation is well known. Such laws have been passed by other states and the United States for the reason that one who furnished labor or material for public improvements can obtain no security for his claim by way of liens, commonly known as "mechanics' liens." This being beyond question the purpose of the statute, what is the case before us? Plain-

tiff seeks to recover the value of certain material which it furnished to W. W. Atkin to be used by said Atkin in paving some of the streets of Kansas City, Kan., under and by virtue of certain contracts which W. W. Atkin had with said city of Kansas City. It seeks to recover this sum of the defendant, National Surety Company, for the reason that in and by the bonds, copies of which are attached to plaintiff's complaint, the defendant agreed to pay all labor and material bills incurred by Atkin in the prosecution of the work which he had contracted to do. This is the agreement which the plaintiff is seeking to enforce. This bond was not given for the faithful performance of the contract between the city of Kansas City and Atkin. The city of Kansas City was in no wise interested in whether Atkin paid his labor or material bills, and the contract between Atkin and the city of Kansas City was in no wise the consideration of the bonds sued on in this action. The section of the Kansas statute which required this bond did not intend that materialmen and laborers should be paid if the contract for public improvements was valid, and that they should receive nothing if it were void. Such a construction would place the laborer and materialmen in a position where they would have to furnish labor and material at their peril; the question whether they would get their pay or not being made to depend upon whether the contractor had for any reason entered into an invalid contract. But it is wholly beside the question at issue to force the invalidity of the contract between Atkin and the city into the present controversy. It is urged by the Supreme Court of Kansas in the case cited that the contract between Atkin and the city of Kansas City was a consideration for the contracts upon which suit is brought. This cannot be so.

Atkin by the bond which he signed agreed to pay the plaintiff in this action for every dollar's worth of material that he should furnish him. What was the consideration of that contract? Beyond all question, it was the furnishing of the material by the plaintiff and the payment therefor by Atkin. Can it for one instant be claimed that there was anything immoral, or prohibited by statute in this agreement that the plaintiff should furnish and sell its material to Atkin, and that Atkin should pay for it? How can it be claimed that this valid and lawful contract is destroyed by the fact that the contract between Atkin and Kansas City, with which the plaintiff had nothing to do, was void, not by reason of any immorality or moral turpitude, but because it was entered into contrary to the provisions of the statute of Kansas? The consideration for the contracts in controversy as between the plaintiff and the defendant surety company was the same as between the plaintiff and Atkin, with the addition that the defendant surety company required the payment of a cash premium before it would sign the bond. The simple proposition, so far as this question is concerned, is this: The plaintiff furnished material to Atkin. Atkin agreed to pay for it. The surety company agreed that, if Atkin did not, it would, and the consideration of this agreement to do so was the furnishing of material by plaintiff to Atkin and the payment of the usual premium to defendant for signing such bonds, and in the opinion of this court that contract stands untainted and in full integrity, regardless of the invalidity of the contract between Atkin and the city of Kansas City. It is urged

that the plaintiff knew of the facts which are set up in the answer at the time it furnished the material sued for. I do not think this has anything to do with the present controversy. There was nothing immoral, contrary to public policy, or public statute in the plaintiff selling brick to Atkin, even if it knew the facts set up in the answer. And it is very doubtful whether a citizen of the state of Missouri is bound to know a certain state of facts would render a contract void under the laws of Kansas, especially before the decision of the Supreme Court of Kansas declaring that they did. It results from the foregoing that in the opinion of this court the legality of the contract between Atkin and Kansas City cannot be urged as a defense by the surety company in this action.

We will now consider the statute of limitations. By section 4280, 1 Rev. St. Mo. 1899, it is provided:

"Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be complete defense to any action thereon, brought in any of the courts of this state."

The statute of Kansas hereinbefore referred to, which authorized and provided for the giving of the bonds in controversy, provides that no action shall be brought on said bond after six months from the completion of said public improvements or public buildings. Another statute of Kansas, being section 4890 of the Compilation of 1905, provides as follows:

"If any action be commenced within due time and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than on the merits, and the time limited for the same shall have expired, the plaintiff, or if he die and the cause of action survive, his representatives may commence a new action within one year after the reversal or failure."

The question before us is whether the last-named section applies to the law providing for the giving of the bonds in question and the limitation therein specified. If so, this action is not barred, but if, on the contrary, it does not apply to said limitation of six months, then the plaintiff's action is barred, unless the bonds can be held good as common-law bonds, independent of the statute. Conceding that the bonds in question are statutory bonds, the plaintiff did commence its action in the state of Kansas within the six months limited by law for the bringing of the same, and after obtaining judgment of the trial court the same was reversed and remanded by the Supreme Court of Kansas, and the plaintiff then instituted this action in this court within the time limited by said section 4890. The court is of the opinion that under the decisions of the Supreme Court of Kansas this action is not barred. In the case of Seaton v. Hickson, 35 Kan. 663, 12 Pac. 22, the Kansas Supreme Court held that section 23 of the Kansas Code, which is the same as section 4890 herein mentioned, applied to actions brought in Kansas under the mechanic's lien law. To the same effect is the case of Hobbs v. Spencer, 49 Kan. 769, 31 Pac. 702, which was an action in regard to a tax title under a statute of Kansas which provided a remedy and limited the time within which the suit could be commenced. The Supreme Court of Kansas held that said section 23 was applicable. In the case of Becker v. Railway Co., 70 Kan. 193, 78 Pac. 408, decided in 1904, the Supreme Court of

Kansas recognized the doctrine declared in Seaton v. Hickson, supra. This is the last expression of the opinion of said court which has been called to the attention of this court, and it would seem that the Supreme Court of Kansas has in cases of this kind applied the provision of said section 23 uniformly. It is claimed, however, that the case of Rodman v. Railway Co., 65 Kan. 645, 70 Pac. 642, 59 L. R. A. 704, is decisive of the question now under discussion, and that that decision compels a holding by this court that the plaintiff's claim is barred. The court does not so view the decision last mentioned. The learned judge who delivered the opinion held that, where a statute creates the right of action itself and prescribes in what time the action shall be brought, the limitation is a condition of the right, and one who does not bring himself within the provision of the statute cannot maintain his action; but it is also said in the opinion of the court as follows:

"A limitation upon the time in which a pre-existing right of action may be exercised is governed by the general statutes of limitations, and in consequence falls within the saving provisions of section 23, above quoted."

No reference is made in the opinion of the court in the last-mentioned case to the other cases in the Supreme Court of Kansas, hereinbefore cited, and this court is of the opinion that it was not the intention of the Supreme Court in the Rodman Case to change the general rule prevailing in the state. In the Rodman Case the right of action was created where none existed before, and it might well be held that the limitation expressed therein was a condition to the exercise of the right, but the law of Kansas authorizing and requiring the giving of the bonds in controversy created no new right of action, within the meaning of the phrase as considered in the Rodman Case. A right of action upon a bond by the obligee against the obligor existed long before the passage of the law in question. In the law which authorized the bonds nothing is said about a right of action. The law simply authorized and required the bonds to be given. The law no more created a new right of action than do parties create a right of action when they enter into contracts every day. The right of action by obligor against obligee existed long before the statute in question and the limitation in the statute referred to this pre-existing right. The Rodman Case is, when carefully considered, direct and controlling authority that said section 4890 is applicable to the law authorizing the bonds, because that case expressly holds that, where the limitation is upon a pre-existing right of action, then section 23 or 4890 applies. The idea entertained by the court may be illustrated thus: I have no contract with A. to-day, consequently I may not sue him on contract. To-morrow I make a contract with A. which is subsequently violated by him. I have my right of action, but it was not given me by the contract, and it is immaterial for this purpose whether I entered into the contract voluntarily or by command of a statute. My cause of action arises from the violation of the terms of the contract. My right of action is as old as the common law.

The demurrer will be sustained.