**TULSA RIG REEL & MFG. CO. v. HANSELL et al.**

No. 8367—Opinion Filed Jan. 22, 1918.

Rehearing Denied Feb. 12, 1918.

(170 Pac. 512.)

**1. Schools and School Districts—Contractor's Bonds—Payee—Statute.**

Under section 3881, Revised Laws 1910, the fact that the board of education of a city is named as the payee instead of the state of Oklahoma will not invalidate the bond.

**2. Municipal Corporations—Action on Contractor's Bond — Liability of Sureties—Defenses.**

In an action upon said bond by a materialman to recover for material sold and delivered to the principal, a contractor, the sureties thereon are not entitled to rely as a defense thereto upon the illegality of

the contract made by such contractor with the board of education of said city.

(Syllabus by Hooker, C.)

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by the Tulsa Rig Reel & Manufacturing Company against John Hansel and others. Judgment for defendants upon a directed verdict, and plaintiff brings error. Reversed and remanded, with directions to enter judgment for plaintiff.

Horace Speed and George T. Brown, for plaintiff in error.

Poe, Hindman & Lundy and B. C. Conner, for defendants in error.

Opinion by HOOKER, C. The plaintiff in error sues here to recover upon a contractor's bond executed by Hansel and Rouch as contractors with their codefendants as sureties, for material sold, delivered by it to them, and used by the contractors in the building of a school in the city of Sapulpa. This bond is in the usual and statutory form as provided by section 3881, Revised Laws 1910, except it is made payable to the board of education of said city instead of to the state of Oklahoma. There is no dispute as to the correctness of the claim due the plaintiff in error; for it is admitted that the account set forth in the petition is just and due it.

The petition filed here alleges the execution and delivery of the bond sued upon and the purposes for which the same was so executed, the sale and delivery of the material by plaintiff below to the principal in said bond and for what purpose and how same was used, and asks for judgment thereon for the same due, and in second count the aforesaid bond is treated as a common-law obligation instead of a statutory bond.

The sureties upon said bond answered, and alleged that they had executed said bond upon the assumption that a legal contract had been made by the board of education of the city of Sapulpa with Hansel and Rouch and that the payments to said contractors would be made to them in cash on the basis of 80 per cent. of the material worked in said building, and that the conditions of the contract had been breached and violated and they were thereby released from liability. And they further defended upon the ground that said city had failed and refused to vote and issue bonds with which to pay for said school building as the contract between the board of education and the contractors had stipulated would be done. And as a further defense it is claimed that at the time of the execution of this contract the said board of education was indebted in excess of the revenue and income provided by law for that year, and that any contract in excess thereof without being submitted to the voters of said school district and receiving their assent was illegal and void, and this not having been done rendered the contract void, and the bond sued upon, being executed in order to comply therewith, was also void, and no liability can accrue to them by virtue thereof. This was all put in issue by proper pleading, and the cause came on for hearing, and the plaintiff below established the sale and delivery of the material by it to the contractors and the use thereof in the building contemplated by the bond and then sought to introduce the bond in evidence, to which objection was made by defendants below, and same sustained upon the theory that the contract was void as made by the contractors with the board of education of the city of Sapulpa, for that the same had been made in violation of section 26, art. 10, of the Constitution of the state of Oklahoma, and that under the contract no liability could arise until the bonds provided for therein had been voted and sold. Thereupon the court sustained a demurrer to the evidence of plaintiff below, and directed a verdict for the defendants.

This is not an action by a contractor against the city to recover for services rendered under an illegal contract, but it is one where a materialman is seeking to recover upon the bond executed by the contractor by virtue of statutory requirement for material sold and delivered by it to the contractor and used by the contractor in the construction of the building contemplated by the contract and bond thus made by the contractor with the city, and in said action the sureties upon said bond are attempting to plead as a defense the illegality of the contract made by the city with their principal and knowledge thereof upon the part of the materialman. Are they entitled to make such a defense? Section 3881, Revised Laws 1910, is as follows:

"Whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding one hundred dollars, with any person or persons, for purpose of making any public improvements, or constructing any public buildings or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Oklahoma, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public

building or in making said public improvements."

This bond was executed in conformity thereto.

The Supreme Court of Kansas, in S. A. & R. Co. v. Texas Bldg. Co. et al., 99 Kan. 567, 162 Pac. 299, L. R. A. 1917C, 490, held:

"The bond of the guaranty company was given pursuant to the provisions in * * * Gen. St. 1909, and is required for the protection and benefit of laborers and mechanics and those who furnish material for railroad construction. Such claimants have rights under the bond independent of the rights of the obligee, and no acts or omissions of the obligee or of the contractor for which the laborers * * * are not responsible, will relieve the guaranty company from or affect its liability under the bond. * * *"

One of the purposes of this bond was to protect the materialman, and as to such material he has rights which must be respected.

In Fry v. P. Bannon Co., 179 Ind. 309, 101 N. E. 10, it is said:

"The provisions of the statute * * * furnishes a consideration for the conditions thereby imposed, * * * and the contract and bond are dual in character and run to third persons. * * *"

The fact the bond runs to the board of education instead of the state of Oklahoma does not invalidate it. Dolese Bros. Co. v. Chaney, etc., 44 Okla. 745, 145 Pac. 1119; Thompson v. Grider Imp. Co., 36 Okla. 165, 128 Pac. 266.

As to the liability of the sureties upon said bond for this material, the rule seems to be that, if one claiming his demand can establish his case without the aid of the illegal contract, he is entitled to recover, and the mere fact that he pleads and proves the execution thereof, where same is not necessary, the same does not prevent recovery. See Hambach v. Ward, 69 Wash. 351, 125 Pac. 141; K. C. Co. v. National Surety Co. (C. C.) 149 Fed. 507, 512.

In Kansas City ex rel. v. Schroeder, 196 Mo. 281, 93 S. W. 405, it is said:

"The contract between the materialmen and the contractor is independent of the contract between the city and the contractor; therefore the relief to which the materialmen are entitled does not depend upon the contract between the city and the contractor, but upon that between them and the contractor. The fact, therefore, that the contract between the city and the contractor may be invalid, can have no effect upon the contract between the materialmen and the contractor."

In K. C. H. P. Brick Co. v. National Surety Co., 167 Fed. 499, 93 C. C. A. 132, the Circuit Court of Appeals, Eighth Circuit, it is held:

"(1) The illegality of one contract does not extend to another unless the two are united either in consideration or promise."

"(2) The fact that a paving contract with a city was illegal * * * does not render illegal a bond given by the contractor and running to the state to secure his payment for labor and materials, although such bond was also required by statute to be exacted from all contractors for public improvements; it not being necessary for one furnishing labor or material, in an action to recover therefor on the bond, to prove or rely on the contract with the city."

"(3) A contract for the sale of brick to a paving contractor is not rendered illegal because the seller knew that the brick were to be used in paving streets and was chargeable as a matter of law with knowledge that the contract under which the work was to be done was illegal because let in violation of law."

And in the body of the opinion in that case it is said:

"Giving effect to the statute as thus interpreted, the contracts between Atkins and the city for these several jobs of paving were illegal and void. No action could be based thereon, either for their enforcement or to recover damages for their violation. Any party affected thereby could maintain a suit to restrain the municipal authorities from entering into such contracts, and could successfully resist the collection of assessments based thereon. These contracts, however, are not directly before the court in the present suit. They have been fully executed. The city has paid the agreed price for the paving, and the property owners are paying without objection their assessments to create a fund to discharge the bonds issued to raise money to pay Atkins.

"Three grounds have been advanced in argument in support of the charge that the bonds sued upon are illegal: First, it is urged that they are a part of the illegal contracts between Atkins and the city. The statute provides: 'That whenever any public officer shall, under the laws of the state, enter into contract with any person for the purpose of making any public improvements, * * * such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Kansas in a sum not less than the sum total in the contract, conditioned that such contractor shall pay all indebtedness incurred for labor or material furnished in making said public improvement.'

"The defendant contends that under this statute the contracts between Atkins and the city were incomplete until the bonds in suit were executed, and hence that the latter are tainted with the illegality of the former. While the statute requires public officers to exact such bonds, their failure to do so would not render either the original contract for making the improvement, or collateral contracts for labor and material used therein, illegal, or void. Though the bonds and the contracts bear the same date, they are not part of one entire contract. They are between different parties, rest upon distinct considerations, and require the doing of independent acts. The illegality of one contract does not extend to another unless the two are united either in consideration or promise. Hanover National Bank v. First National Bank, 109 Fed. 421, 48 C. C. A. 482. Such a union does not exist between the contracts in question. The bonds were not given to secure the performance of the contracts between Atkins and the city, but to secure independent contracts of materialmen and laborers. Even when a single contract embraces several agreements, some legal and others illegal, it is the duty of the court to separate the good from the bad, when that is possible. Choctaw, O. & G. R. Co. v. Bond, 160 Fed. 403, 87 C. C. A. 355; Lingle v. Snyder, 160 Fed. 627, 87 C. C. A. 529. This rule would be more readily applied when the agreements are contained in separate instruments. The plaintiff could have established its case without any aid from the illegal contracts. It is true that it pleaded those contracts in its complaint, and introduced them as part of its case upon the trial. This, however, was not necessary. The proof of the bonds and the nonpayment of the purchase price of the brick used in constructing the improvements referred to in the bonds would have made out a complete case in plaintiff's favor. It is what is necessary to be shown, rather than what is in fact shown, that indicates whether the union between two contracts is such as to involve one in the illegality of the other. A suggestion is also made in argument that Atkins was a mere figurehead, and that the real contractor with the city was the Diamond Brick & Tile Company. The evidence fails to support this charge. The only connection shown by the evidence between the corporation and Atkins was its request of him to submit bids for the doing of the work. There is no evidence whatever that the Diamond Brick & Tile Company supported him in the performance of his contract, or that he was in any way its agent. The purchase price of the brick was about three-eighths of the contract price for the improvement, and there is no evidence that the brick company had anything to do with the other important features of the paving, or was concerned in supplying the brick, except to sell them at a stipulated price.

We can find between the bonds sued upon and the contracts between Atkins and the city no such connection as would justify extending the illegality of the latter to the former.

"Second it is urged that because the plaintiff knew of the illegality of the contracts between Atkins and the city, and that the brick it supplied were to be used in the performance of these contracts, it became by reason of its knowledge a party to such illegality, so as to defeat its right to recover the purchase price of the brick. To so hold would be to extend unwisely the effect upon a contract sale of the vendor's knowledge of the use to which property is to be devoted. It is now the holding of American courts that the knowledge of a vendor that property is purchased to be sold or used in violation of law does not defeat his right to recover its price, except in the case of heinous crimes. Wald's Pollock on Contracts (3rd Ed.) 485. But here the use to which the bricks were to be devoted was not illegal. The utmost that can be contended is that they were to be used in the performance of illegal contracts. Even as to that, however, it should be noticed that the contracts were not illegal as to their object, but solely because they were entered into without competitive bidding. The paving of the street was, of course, a perfectly lawful enterprise. To hold that a sale of personal property is illegal because the vender knows that the property is to be used in the performance of a contract, lawful in its object, but illegal because let in violation of law, would affix to a vendor's knowledge vitiating results beyond anything required by judicial authority or sound public policy.

"It follows that, if the bonds sued upon are illegal, the vice must spring, not from their connection with the contracts between Atkins and the city, but from the contracts between the plaintiff and Atkins for the purchase and sale of the brick. If the latter contracts are infected with illegality, the bonds cannot be resorted to as a means of collecting their consideration. It is elementary that all securities for the performance of illegal contracts are tainted with their vice * * *"

In 9 Cyc. p. 546, it is said:

"No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out. * * *"

And on page 550 the rule is stated as follows:

"There are certain exceptions to the rule, stated in the preceding section. These exceptions may be grouped under five heads, viz.: * * * (5) Where the party complaining can exhibit his case without relying upon the illegal transaction."

And in 9 Cyc. p. 556, it is said:

"An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration, or if the plaintiff will not require the aid of the illegal transaction to make out his case."

In 6 R. C. L. p. 821, it is said:

"Even though the parties to an action have been engaged in a transaction either malum in se or prohibited by law, yet if the cause of action between them is disconnected from the illegal act and is founded upon a distinct and collateral consideration, and the plaintiff is not obliged to resort to the illegal contract or transaction in order to maintain the suit, the illegality of the former transaction will not impair or bar the right to maintain the suit. If the contract or obligation does not depend upon or require the enforcement of the unexecuted provisions of the illegal contract, it will be carried out."

In Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 621, it is said:

"(1) A municipal corporation let a contract for the construction of a sewer without complying with charter requirements, and without obtaining the consent of two property owners through whose lands the sewer was to pass, or of the federal authorities for its outlet on government land. Plaintiff sued for the balance of an account for materials furnished the contractor on a bond given, inter alia, for the benefit of materialmen. The bondsmen interposed the defense that the contract was void because ultra vires, and that therefore they were not responsible on the bond. It is held: The tendency of judicial opinion to refuse to avoid contracts made by private corporations because ultra vires does not apply equally to contracts made by municipal corporations; but to both classes of contracts that doctrine should be so administered as not to defeat the ends of justice, or to work a legal wrong.

"(2) A contract ultra vires in the general and primary sense that it is wholly outside the power of the corporation to make under any circumstances is ordinarily void in toto; but whether a contract, strictly within the scope of the corporation's powers, but ultra vires in the restricted or secondary sense that the power has been irregularly exercised, or that it was beyond the power of the corporation 'in some particular or through some undisclosed circumstances,' is wholly void or not, depends upon the circumstances of the particular case.

"(3) The contract here in issue was ultra vires in the secondary and restricted sense only. * * *

"(6) Neither the dictates of public policy nor the analogies of the law justify holding

this contract void, as between dealers who furnished material to the contractor in reliance on the bond and the sureties thereon, who are in a position favored by the law.

"(7) The recital in the bond of the contract as valid and subsisting prevented the sureties thereon from asserting that it was ultra vires."

And in the opinion it is said:

"This is a suit against the bondsmen by a materialman. The final and real question which must be considered in the light of these considerations concerns the effect on these materialmen of the doctrine of ultra vires. In a suit against the bondsmen of the contractor, it is difficult to discover what considerations of public policy would tend to favor the forfeiture of this plaintiff's right. Without controversy, 'all persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make the contract.' State ex rel. St. Paul v. Minnesota Transfer R. Co., 80 Minn. 108, 117, 50 L. R. A. 656, 83 N. W. 32; Bazille v. Ramsey County, 71 Minn. 198, 73 N. W. 845; Newberry v. Fox, 37 Minn. 141, 5 Am. St. Rep. 830, 33 N. W. 333; Mitchell v. St. Louis County, 24 Minn. 459. It might accordingly be reasonable to hold that a materialman dealing with a public contractor is bound to see that the contract with the city is of a class within the scope of municipal powers. But defendants' reasoning on this point, carried to its logical conclusion, would have imposed on the materialman before he extended credit on the strength of the contract and bond, the necessity of not only passing on the validity of the action of the council, but also of determining through what premises the sewer was to pass, according to the survey, and their correct description. He would then have been compelled to ascertain the legality of the city's rights to any streets, to any land condemned by it, or of any title acquired from property owners, and thereunto to examine and to have access to the records of the city officials, and probably to obtain and examine the abstracts of title to the various tracts involved. It would, in effect, require the city to have completed all details affecting a sewer before a valid contract could be made. This is not the law. Keough v. St. Paul [66 Minn. 114, 68 N. W. 843] supra. In effect the rule for which defendants contend would tend to deprive the contractor of credits and involve serious delays and embarrassments, to legislate a new clause into the charter, and repeal the present express provisions as to the contract and the bond which are expressly designed to enable the contractor to secure labor and materials upon the credit of the contract and bond. By what authority or reasoning is one selling material to a municipal contractor made the curator of public interests, and required

to do independently the work of the counsel for the city as to correctness of titles, or of the engineer as to the feasibility of the construction of a sewer or its utility when constructed? What considerations remove him from the protections of the presumption of performance of official duty upon which persons dealing on the faith of instruments ordinarily have the right to rely? There is good authority to the effect that, where the act of a corporation is done with power to do it, but without the formality prescribed for the execution of the power, persons dealing with the company are not bound to do more than to ascertain that the power to do the proposed act exists. 5 Thomp. Corp. 5978; 2 Morawetz, Priv. Corp. §§ 678, 686. Allen, J., in Moore v. New York, 73 N. Y. 238, 245, 247, 29 Am. Rep. [134], said: 'Persons dealing with corporations in respect to a matter within the general scope of the powers of the city government need not go behind the doings of the common council, apparently regular, to inquire after preliminary or extrinsic irregularities.' 'It is indispensable to any government, state or municipal, that full faith and credit be given to the acts of the governing body and that individuals having occasion to deal with agents of the government should be permitted to regard the acts of the government valid in the absence of any apparent defect, either in the power or the manner of its exercise. If the act is not within the general powers of the municipality or its governing body, the case would be different, for every one dealing with the agents of the municipality is bound to know the limits of that power. It is not allowable, however, for a municipal corporation to perpetrate a fraud upon those contracting with it upon the faith of its laws and ordinances, apparently valid and represented as such, by repudiating them upon the allegation of some technical and formal irregularity in their adoption, and omission of some collateral act, some formality prescribed by statute, not of the substance of the power or jurisdictional in its character.' That leading case and this doctrine was approved by this court in Bradley v. West Duluth, 45 Minn. 4, 47 N. W. 166 And see Brownell v. Greenwich, 114 N. Y. 518, 4 L. R. A. 685, 22 N. E. 24; Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, 695; Miners' Ditch Co. v. Zellerbach, 37 Cal. 543, 578, 587, 99 Am. Dec. 300; Green's Brice, Ultra Vires, 37, and note A, p. 506; 5 Thomp. Corp. § 5967. The policy of the law, and apparently the law itself, oppose the adoption of defendants' views. Nor does the admitted principle that the defendants, as sureties, are entitled to the strict construction of the facts giving rise to an action against them, and are generally favored in the law, affect the doctrine of ultra vires. As a matter of abstract justice, the sureties to whom a consideration of legal sufficiency has moved, although it does not appear that substantial benefits have accrued to them, have held themselves out as responsible for the validity of the contract to persons having the right to rely upon the security that bond is expressly designed to afford. Moreover, 'Volenti non fit injuria.' Red Wing Sewer Pipe Co. v. Donnelly [102 Minn. 192] 113 N. W. 1 [120 Am. St. Rep. 619]. The contractor could not assert the plea of ultra vires against the city to escape liability on the contract or to retain benefits received under it. By parity of reasoning, the sureties are in no position to raise the same defense as against this materialman. See St. Louis v. Davidson, 102 Mo. 149, 22 Am. St. Rep. 764. 14 S. W. 825; Fergus Falls v. Fergus Falls Hotel Co., 80 Minn. 165, 50 L. R. A. 170, 81 Am. St. Rep. 240, 83 N. W. 54; Baker v. Northwestern Guaranty Loan Co., 36 Minn. 185, 30 N. W. 464; Union Nat. Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; 10 Cyc. Law & Prac. 1166; 5 Thomp. Corp. § 6080. This reasoning is in exact accord with the rule founded upon estoppel, and frequently applied to defeat the plea of ultra vires which denies to a party benefited by a contract the right to question its validity. Brown, J., in Buffalo v. Balcom, 134 N. Y. 532, 32 N. E. 7. And see Boehmer v. Schuylkill County, 46 Pa. 452; Rensselaer County v. Bates, 17 N. Y. 242; Mississippi County v. Jackson, 51 Mo. 23; McLean v. State, 8 Heisk. 22, 255; Homer v. Merritt, 27 La. Ann. 568."

Applying the rule announced above in the authorities cited to the facts in this case, we must hold that the sureties here are not entitled to make the defenses relied upon as against the claim of the plaintiff in error for material sold and delivered to their principal, the contractor.

In view of the fact that the demand of the plaintiff in error is admittedly correct and just, and the defendants in error have agreed that unless the defenses relied upon by them may be made, there is no defense to said action.

This cause is reversed and remanded, with directions to the lower court to enter a judgment in favor of the plaintiffs in error and against the defendants in error for the full amount of its claim and interest.

By the Court: It is so ordered.