## WARREN COUNTY, PA., to Use of SKINNER, v. SOUTHERN SURETY CO. et al.

District Court, E. D. Pennsylvania. July 31, 1929.

No. 11396.

Elton J. Buckley, of Philadelphia, Pa., for plaintiff.

C. Donald Swartz and Swartz & Campbell, all of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. Any appeal in this case to the common-sense judgment (without regard to the settled principles of law) would be met with the response that the surety defendant should pay the use plaintiff what he claims. A short outline statement of the fact situation will disclose the basis for such a judgment.

The county of Warren planned to build a road. The plans and specifications were submitted to competitive bidders. The defendant company became surety for the successful bidder. One requirement of the contract was that the contractor should pay for all work done and materials supplied to the construction work. This promise was incorporated in the bond in suit. It is averred to have been the fact that the surety charged and was paid an increased premium because it assumed the obligation to pay (up to the penal sum of the bond) the debts incurred by the contractor. It is fair inference that they did so charge. Such a debt is owing to the use plaintiff. Why, then, should the surety company not redeem its promise? The answer is that, being a corporation and being hence without conscience, it incurred no obligations by its promise, except those which the law will enforce, and that the law will not enforce the promise made.

The question before us is consequently so narrowed. Under the Pennsylvania system, the governmental unit is the township. The county includes all the townships within it, and the state is made up of the several counties. This unit had at first wholly to do wtih road constructions. Highways were laid out by juries through proceedings in the court of quarter sessions of the county. The work of actual construction was committed to the township road supervisors. Upon a finding that a bridge, as part of the road construction, would cost more than the township should be required to pay, the duty of such bridge construction was imposed upon the county under the supervision of the county commissioners. After a time it was recognized that a road might be a purely local improvement, having only a local township use; that it might be such as that the cost of construction should be borne by the county, or it might reach the scope and dignity of a state highway, the cost of the construction of which should be assumed in whole or part by the state. There thus came to be a fourfold classification of highways into township roads, county roads, state-aid roads, and state highways. This system was, of course, exclusive of streets in incorporated cities and boroughs.

The policy was likewise adopted of requiring contractors for public works to give bond, with condition not merely for the completion of the work, and to indemnify the public from loss through any failure of the contractor, but likewise after this to pay the debts incurred to subcontractors and others for all work done and materials supplied to the construction, and provision was made by law for the enforcement of this obligation of the bond. Neither the soundness of such legislation in respect to its accordance with correct principles, nor the wisdom of the policy which it enforces, is denied. The contract for the road in question and the bond in suit were given upon the understanding that the quoted law was applicable. Unfortunately for the use plaintiff, however, this law was limited to state highway contracts, and the road with which we are concerned is not a state road. The bond in suit is in consequence a voluntary bond, and not one required by law to be given.

There have been several rulings made in this case upon statutory demurrers and a rule for judgment. Any apparent disagreements are due to the circumstance that the pleaded facts are different. The suit was originally brought upon the theory that the bond was the statutory bond, the action upon which is regulated by the act of assembly. The statement of claim was afterwards amended, so that the present theory is that the bond is a voluntary one, and the act of assembly does not apply. On the rule for judgment there was a fact dispute over a defense to the extent of approximately $4,000. We could not, in consequence, enter a judgment for the plaintiff for the whole sum claimed. We might, it is true, have then ruled, as was ruled on the trial, that the plaintiff could not recover; but there were reasons (into which we need not go) for ruling this as a trial question, instead of one of pleading.

The trial ruling was made by following the case of Greene County v. Southern Surety Co., 292 Pa. 304, 141 A. 27. Counsel for plaintiff has sought to distinguish the case at bar from the cited case. The two are, however, on all fours. The facts are so similar as to be in substance identical, including the fact that the bond is the same in its provisions, and the defendant in the cited case the defendant here. It is true that the reasoning upon which cases of this general type have been ruled in Pennsylvania is not satisfying. The common-law principle that one cannot at law recover upon a promise made to another is not absolute. A promise made to one for the use and benefit of others may

upon general principles be enforced under the conditions which here exist, and the Pennsylvania practice of bringing suit in the name of the promisee to the use of the party beneficially concerned meets all the needs of the situation. The action, being by the legal plaintiff, satisfies the common-law principle of in whom is the right of action, and, being brought to the use of the party for whose benefit the promise was made, satisfies the equities of the situation.

The other objection (which presents in most jurisdictions greater practical difficulties) that the suit is at law on a bond to the penal sum of which the liability of the surety is limited, while what is due the several use plaintiffs differs and in the aggregate may overrun the bond, thus presenting the dilemma of the necessity of several different judgments in one action, is an objection which the law of Pennsylvania is framed to meet. Pennsylvania has no courts of equity, and for many years had no courts possessing any of the powers of courts of equity. The common-law courts in consequence per force applied equitable principles in common-law actions and through common-law forms. Equitable rights were commonly enforced and equitable defenses admitted in actions of assumpsit, so that it became an accepted saying with Pennsylvania lawyers that "an action in assumpsit was the equivalent of a bill in equity." Such a judgment as is called for by this case could be entered by adopting the simple expedient of allowing a recovery for the full sum due in the name of the legal plaintiff, charged with a trust for the benefit of those to whom the money was payable. The form of the promise would seem to satisfy the rules of the common law, as the promisee has a cause of action and right of action. The real objection would seem to be directed to the measure of damages. Why allow the legal plaintiff to recover for what as to him is not a legal injury? This, however, would again seem to be an unnecessarily narrow view of the damage feature.

The expedient above suggested is the very one which in principle is adopted by the statutes which provide for the enforcement of official bonds. It would seem to be true, however, that although promises made to one have under some circumstances been enforced by the courts of Pennsylvania for the benefit of another in actions of assumpsit, there is no instance of such a recovery in an action in covenant, and here the bond is under seal, and the action really in debt or covenant, although it is likewise true that by statute all

actions (with some exceptions) are now known as actions in assumpit or in trespass.

 The weight of all these and other considerations which would lead to a different judgment were felt by Mr. Justice Kephart, who wrote the opinion in the Greene County Case. The ruling in that case was not based upon the applicable legal principles, but was constrained by the prior rulings of the Pennsylvania courts, which were felt to have settled the law, and were, because of this, followed. We in like manner feel bound to follow the law of Pennsylvania as thus declared to be. Counsel for the plaintiff, however, strenuously urges that, whatever the law of Pennsylvania, the doctrine announced by the courts of the United States calls for a different ruling, and the following, among many other cases, are cited in support of this proposition: Carpenter v. Providence, Washington Ins. Co., 41 U. S. (16 Pet.) 495, 10 L. Ed. 1044; Long v. Monarch Accident Ins. Co. of Springfield, Mass. (C. C. A.) 30 F.(2d) 929; Kansas City Hydraulic Press Brick Co. v. National Surety Co. (C. C.) 149 F. 507; Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; Kelly v. New England Mut. Life Ins. Co. (D. C.) 32 F.(2d) 611; Meigs v. London Assur. Co. (C. C. A.) 134 F. 1021.

One practical obstacle to the following of different rulings in the state and United States courts, in diversity of citizenship cases, is that the law varies with the accident of residence and the sum in controversy. This should not be. The law should be uniform in its operation, irrespective of the parties or the financial value of the interests at stake. A difficulty in accepting the doctrine of a rejection of the state law as declared by the state courts for some other law is to determine what law is to be applied. Every citizen of the United States owes under our system of government a dual allegiance. He is a citizen of the United States, but is likewise a citizen of the state in which he resides. As a citizen of the United States he is governed by and owes obedience to the laws of the United States, and as a citizen of his state (as here of Pennsylvania) he owes the like obedience to the laws of the state. The people of the United States are under subjection to no other sovereignty whatsoever. The laws of the United States are found in the Constitution, the acts of Congress made in accordance therewith, treaties made by authority of the United States, the law maritime, and international law, as these may be interpreted and construed by the courts of the United States. The laws of the state

are to be found in the Constitution of the United States and of the state, in acts of the state Legislature in accordance therewith, and in the absence of statutory law in the rulings of the courts of the state, which may take the applicable principles of law from any source within reach.

In the case at bar there is no law of the United States on the subject with which the suit concerns itself, and, if the state law is rejected, to the laws of what sovereignty shall we look for guidance? It is true that it has been ruled that, when the principles of the law of a case is of general application, as in negotiable instrument and insurance law cases, where uniformity is of great practical importance, the courts of the United States have declared themselves to be at liberty to apply these general principles of law as they find them to be, and not to be controlled by the law as laid down in rulings of the state courts. Here, however, the contract in suit is a Pennsylvania contract, relating to a road construction within the state, and the policy of the law which concerns itself with the case is a state policy, which is restricted to state constructions. The legislation to be interpreted is found in state statutes. Whatever ruling is made affects no contracts made elsewhere. To hold that the courts of the state have no power to declare the state law on the subject, but the law is as it is declared by the courts of the United States to be, is to subject the people of the state to the rule of the United States courts, a governmental power the possession of which those courts have never claimed.

The conclusion reached is that the law of this case is as the state courts have declared it to be, and under the law as so found the present action cannot be maintained. We do not find in the ruling of the court in the Kansas City Case, supra, the application to the instant case, which counsel for plaintiff so strongly urges upon us. In the cited case no question of a cause of action or right of action in the sense of the instant case was raised. There the point made was that, as the contract with the city was invalid, because entered into without competitive bidding, the bond to pay for material supplied to the contract construction was likewise invalid. The court held that it was bound by the ruling of the state court that the construction contract was invalid, but that it was at liberty to exercise its own judgment of whether the bond to pay materialmen was thereby likewise invalidated, because the latter question was one "of general jurisprudence."

However this may be, the ruling thus made is not controlling upon us on the question here presented. The question here presented is whether the law of a state, which denies a right of action upon a promise made to one for the benefit of others, can be ignored in a diversity of citizenship case, because the judge of the United States court thinks such a law not to be in accord with sound general principles.

The motion to take off the nonsuit is denied, with exception allowed to plaintiff. There might, of course, ordinarily be a question raised between the propriety of a nonsuit and a direction to award nominal damages. This question, however, does not arise in the present case.